NATIONAL FIRE INSURANCE COMPANY *vs.* WILLIAM F. GOGGIN & others.

Suffolk.     April 8, 1929. — May 31, 1929.

Present: RUGG, C.J., PIERCE, WAIT, SANDERSON, & FIELD, JJ.

*Insurance*, Fire: hearing by referees. *Reference and Referees. Statute,* Construction. *Equity Pleading and Practice*, Waiver of defence. *Waiver.*

If defendants, in a suit in equity by an insurance company against referees appointed under a fire insurance policy in the Massachusetts standard form to prevent the referees from completing an award by reason of misconduct on their part, answer to the bill and proceed to trial without objecting to the form of procedure on the ground that the plaintiff, if sued at law on an award made in the circumstances averred by it might impeach the award in that action without resorting to a suit in equity, they thereby waive their right to raise objection, if any there be, to the form of procedure.

The provisions of G. L. c. 175, § 101, required that the minds of referees appointed under the provisions of a fire insurance policy in the Massachusetts standard form should be open to the truth and intent upon

its ascertainment, and that material evidence when presented should be received and given due consideration; but they did not require that the referees should be bound by the strict rules of evidence; they might proceed by the summary methods implied by an arbitration.

Statement by RUGG, C.J., of the duties of referees appointed under the provisions of a fire insurance policy in the Massachusetts standard form.

Referees appointed on August 20, 1927, under the provisions of a fire insurance policy in the Massachusetts standard form gave notice of a hearing under G. L. c. 175, § 100, to be held at Peabody on August 25. The day before the hearing the referee appointed by the insurance company, having heard that counsel for the insurance company was absent on his vacation in Duxbury, objected to having the hearing in the absence of such counsel. A referee appointed by the insurance commissioner stated that, by reason of the statutory provision, the meeting must be had, but that it could be for organization and a view of the premises without hearing any witnesses. When it convened, however, witnesses for the owners were present and were heard, it being agreed that they again should be present at a later meeting, when the counsel for the insurance company could examine them. Evidence then was heard as to offers made for the property, which would not have been competent at a trial in a court and which ought not to have been received by the referees. At a later meeting, all parties and the counsel for the insurance company were present with witnesses, including those who had testified at the preceding meeting. The counsel for the insurance company refused to go forward, attacking the regularity of the first meeting and the good faith of the referees. Under direction of the insurance department of the Commonwealth, the hearings went forward. In a suit in equity by the insurance company to prevent the referees from completing their award, the referees were not found to have acted with any bias, prejudice, unfairness or fraud, from any wrongful motive or without good faith. *Held,* that,

(1) While the referees were indiscreet in proceeding to hear evidence at the first hearing in the circumstances, neither such indiscretion nor the receipt of the incompetent evidence furnished sufficient reason for holding that the reference had been invalidated;

(2) The hearings should proceed;

(3) A decree dismissing the bill was affirmed.

BILL IN EQUITY, filed in the Superior Court on September 9, 1927, and afterwards amended, to prevent referees appointed under the provisions of a fire insurance policy in the Massachusetts standard form covering property in Peabody from completing hearings begun by them, to compel removal of two referees, appointed by the insured and by the insurance commissioner respectively, the appointment of their successors, and hearings and an award by new

referees thus constituted, and to enjoin the insured from bringing action on the policy until such an award.

The suit was heard by *Whiting*, J., a stenographer having been appointed under the provisions of G. L. c. 214, § 24, Equity Rule 29 (1926), to take the evidence. Findings by the judge are stated in the opinion. A final decree was entered dismissing the bill. The plaintiff appealed.

*W. B. Leach, Jr.*, for the plaintiff.

*G. Alpert*, for the defendants Goggin and others.

*A. S. Howard*, for the defendants Wiggin and another.

RUGG, C.J. The plaintiff is the insurer under a Massachusetts standard form of fire insurance policy. The property insured was partially or wholly destroyed by fire on June 1, 1927. Referees were appointed to ascertain the amount for which the insurer is liable. The defendants are those referees, the owners of the insured property and the insurance commissioner. The object of the suit is to prevent the referees from completing an award under the policy.

The plaintiff appealed from an order sustaining a demurrer to the bill by the insurance commissioner. That appeal has not been argued and is treated as waived.

The insurer under our law when sued on the policy may impeach the award for misconduct of the referees without resorting to equity. *Bean* v. *Farnam*, 6 Pick. 269, 273. *Doherty* v. *Phoenix Ins. Co.* 224 Mass. 310, 314, 315. But the other defendants except the insurance commissioner answered and proceeded to trial on the merits without objection. That was a waiver of the right to raise objection, if any there be, to the form of procedure. *Bauer* v. *International Waste Co.* 201 Mass. 197, 201. *Ryan* v. *Annelin*, 228 Mass. 591.

Issues raised by the defendants other than the insurance commissioner were heard by a trial judge, who made findings of facts and entered a decree dismissing the bill. The case comes before us on appeal with report of all the evidence. The findings are not seriously controverted, are not plainly wrong but fully supported by evidence, and must be accepted as true.

Summarized, the facts thus found are that after the fire a

board of referees as required by the Massachusetts standard policy was constituted. The two referees selected by the insurer and the insured being unable to select a third, one Wiggin was appointed as such referee by the insurance commissioner, and notified accordingly, on August 20, 1927. G. L. c. 175, § 100. The referees designated August 25, 1927, as the time and the premises where the insured buildings were located as the place for the first meeting of the referees. Wiggin suggested to the other two referees that they give notice of the meeting to the persons who had asked for their appointment and request their presence with witnesses. He personally sent a letter to the owners of the property giving them notice of the meeting and requesting them to be present with their witnesses. Shortly after, the defendant Perry, whose appointment had been suggested by the insurance company, ascertained that one Richard Cotter, counsel for the insurance company, was on his vacation at Duxbury, Massachusetts. The day before the meeting the defendants, Wiggin and Perry had a telephonic communication during which Perry objected to having the meeting in the absence of Mr. Cotter. The defendant Wiggin then said that they would have to have the meeting because of the provisions of law with regard to the date for the first meeting (see G. L. c. 175, § 101); that this meeting could be for organization and a view of the premises without hearing any witnesses. No statement was then made that counsel for the parties could not be present. Immediately the defendant Perry telephoned to Mr. Cotter the substance of the telephone conversation above set forth. Upon the arrival of the referees at the premises they found that the owners were present with a number of witnesses and with counsel; that the plaintiff was not represented by counsel nor did it have any witnesses present. The referees organized with the appointment of the defendant Robb, the referee suggested by the owners, as secretary and viewed the premises. Then the defendant Wiggin stated that as witnesses were present he thought the referees should listen to them at that time. The defendant Perry objected to going on in the absence of Mr. Cotter. There was some discussion by the referees during

which it was agreed by them that any witnesses who were heard at that time should be present at the next meeting, at which time Mr. Cotter would have full opportunity to examine them. Counsel for the owners refrained from active participation in the hearing in the absence of Mr. Cotter. Thereupon all the referees saw no harm in taking the story of those present and testimony was taken from four witnesses relative to the value of the buildings, the assessed valuation, and other matters relating to the questions to be determined by the referees. At this meeting it was agreed by all the referees and counsel for the owners that the witnesses then heard would attend a later meeting and could then be examined by counsel for the insurance company. At the close of the meeting on the premises the witnesses were told that they would have to appear at a later hearing for an examination by counsel of the insurance company if it so desired. At a subsequent meeting all parties and Mr. Cotter were present with their witnesses, including all those whose testimony was taken at the first meeting. Mr. Cotter objected to going on further with these referees, making what seemed to be a prepared statement, attacking the regularity of the first meeting and the good faith of the referees. Thereupon the referees conferred with the insurance department of the Commonwealth and were told to proceed and did proceed with the hearing. Mr. Cotter left the hearing as soon as he learned that the meeting was about to proceed. The defendant Perry stated that he was asked by the insurance company to register a protest against going on and then said, having done so, that he was willing to proceed.

At the trial the plaintiff made no claim of unfairness, prejudice, fraud, or lack of good faith on the part of the referees, and amended the bill by striking out all allegations of that nature. The judge, however, made these further findings: "In view of the attack upon the qualifications of the defendant Wiggin and the allegations respecting the defendant Wiggin and Robb, I find as a fact upon the evidence that the defendant Wiggin was properly qualified for the position and that neither the defendant Wiggin nor Robb acted with any bias, prejudice, unfairness or fraud, from any wrongful

motive or without good faith and that they were actuated in what they did by a desire to act impartially and in accordance with the reference and to that end obtained the opinion of the insurance department of the Commonwealth as questions relating to procedure and other complications arose. . . . I further find as a fact that the taking of testimony at the first meeting of the referees on the premises was in good faith with a desire to expedite matters and with no intent on the part of any referee to act wrongfully. That the testimony heard by them at that time did not result in determining in their minds any of the questions involved in the matters that they are to decide."

It is not necessary to consider St. 1927, c. 285, because although approved on April 20 it was not declared to be an emergency law and did not take effect until after the claim here in issue had arisen, and therefore by § 4 is not applicable to these reference proceedings. G. L. c. 4, § 1. Art. 48 of Amendments to the Constitution. The Referendum, Part I.

It is required by G. L. c. 175, § 101, that referees selected under the Massachusetts standard policy to determine the amount of loss arising from a fire "shall, within ten days after the appointment of the third referee, meet to hear the evidence in the case; and if the case is not completed at the first hearing, adjourned hearings may be held from time to time, but not more than one week shall elapse between hearings," with an exception not here material. This section is in substance a reënactment of St. 1910, c. 489. Prior to that enactment it had been implied by *Farrell* v. *German American Ins. Co.* 175 Mass. 340, that the hearing of evidence was not essential to the validity of an award by referees under the Massachusetts standard policy. It was expressly decided in *Hanley* v. *Aetna Ins. Co.* 215 Mass. 425, that referees might determine the amount of loss in any way thought by them to be wise in the exercise of honest discretion even to the extent of refusing to hear evidence touching such loss proffered by the parties. The opinion in that case contains an exhaustive review of the practice and the statutes concerning the ascertainment of the amount of loss under fire insurance policies. It was held to be the purpose of the several statutes enacted

from time to time to do away with formal trials and "to adopt the summary method of establishing the amount of the loss which theretofore had been explained in *Palmer* v. *Clark,*" 106 Mass. 373. Although the decision in the Hanley case was rendered after the enactment of St. 1910, c. 489, no reference is made to it in the opinion, doubtless because that statute was not operative at the time of the events there being considered. This enactment, like all statutes, must be interpreted according to the intent of its makers to be ascertained from the words used, considered in connection with the subject matter, the preëxisting state of the common and statutory law, the evil to be remedied and main object to be accomplished. *Duggan* v. *Bay State Street Railway,* 230 Mass. 370, 374. It cannot be supposed that said c. 489, now G. L. c. 175, § 101, was designed to do more than to require referees "to hear the evidence" offered by parties. Refusal by referees to hear evidence when offered by the parties apparently was the evil aimed at. The dominant words of the statute are directed specifically to that point. "To hear the evidence in the case" imports in this connection that the minds of the referees shall be open to the truth and intent upon its ascertainment, and that material evidence when presented shall be received and given due consideration. But in this connection it does not mean that referees shall be bound by the strict rules of evidence. They may proceed by the summary methods implied by an arbitration. *Second Society of Universalists in Boston* v. *Royal Ins. Co. Ltd.* 221 Mass. 518, 522. The use of the words "to hear the evidence" and to conduct a "hearing" generally would imply at least that both parties should be present even if not always signifying a formal procedure with all the attributes of judicial inquiry. *McArthur Brothers Co.* v. *Commonwealth,* 197 Mass. 137, 140. In the light of the known practice and the development of the statutory law, it is unlikely that all the requisites of judicial proceedings were intended by the Legislature to attach to the meaning of G. L. c. 175, § 101, and to references under the Massachusetts standard policy. Such referees perform functions in some aspects resembling *quasi* judicial duties. They should be deeply

solicitous not only to be impartial but to avoid every ap-
pearance of bias. They should be clear and fair in all their
motives and do nothing to give ground for inferences that
they are not proceeding with a just regard for all the rights
involved. A high standard of integrity and propriety in all
their conduct is essential to performance of the trust re-
posed in them. See *Harrington* v. *Boston Elevated Railway,*
229 Mass. 421, 433.

It was an indiscretion on the part of the referees in the
case at bar to proceed to hear evidence in the absence of one
party when it had been said that the meeting would be held
for organization and a view without hearing witnesses. Ap-
parently evidence was received on that occasion which would
not have been competent at a trial in a court and which ought
not to have been received by the referees. But reception of
evidence of that nature as to offers made for the property,
standing alone, would not commonly require or justify the
setting aside of an award. The statute does not demand
that the referees be learned in the law. It is matter of com-
mon experience that they are generally laymen selected be-
cause of practical knowledge as to the subject involved. The
mere fact that evidence was received by the referees as dis-
closed by the present record is not enough to stamp the ref-
erence as invalid. *Clark* v. *New England Telephone & Tele-
graph Co.* 229 Mass. 1, 10. It is the manifest purpose of said
§ 101 that the hearings proceed with dispatch. It was the
duty of the plaintiff to arrange to be represented at the hear-
ing if it so desired. We interpret the finding of the trial
judge to mean that the insurer was notified in ample time to
have a representative present at the first meeting of the ref-
erees. The referees were ready at a subsequent meeting to
have the representative of the insurer cross-examine all the
witnesses previously heard and such witnesses were present
for that purpose. Findings of the trial judge that the
referees exercised good faith and were free from all bias are
categorical and complete. All these considerations lead us
to the conclusion that there is no sufficient reason for holding
that the reference has been invalidated by what has hap-
pened. The hearings ought to proceed to an end and an

award be made.    In making this decision we do not relax in any particular what was said in *Strong* v. *Strong,* 9 Cush. 560, 572, 573.    That was a case where one of several arbitrators acted furtively and in a partial and wholly unjudicial manner, giving fair ground for the inference of corruption, or at least improper motives.    Those elements are absent from the case at bar.

> *Order sustaining demurrer of insurance commissioner affirmed.    Decree dismissing bill affirmed with costs.*