GEORGE J. OTT *vs.* BOARD OF REGISTRATION IN MEDICINE.

Suffolk.    December 5, 1930. — September 11, 1931.

Present: RUGG, C.J., PIERCE, CARROLL, & FIELD, JJ.

*Board of Registration in Medicine.    Supreme Judicial Court.*

In G. L. c. 112, § 64, providing that one whose registration to practise medicine has been cancelled by the board of registration in medicine may petition the Supreme Judicial Court for a decree "revising or reversing the decision of the board," the word "revising" means in substance the same as to review and does not import an entire re-trial such as would arise on appeal; it indicates a reëxamination of the proceedings already had.

The procedure established by said § 64 upon such a petition is that there is not to be a new trial on the merits of the issues, but that the decision of the board is to be examined with every reasonable pre-sumption in its favor and it is not to be revised or reversed without plain proof of such error or mistake as to vitiate fairness in the hear-ing or justice in the decision or to show that the conclusion reached by the board was palpably not in accordance with truth, was the result of error or mistake, or was unsupported in law.

At the hearing of a petition by a physician under G. L. c. 112, § 64, to reverse a decision by the board of registration in medicine can-celling his registration to practise medicine following a hearing by the board on a charge that the petitioner advised and offered to perform an abortion upon a woman, the single justice received in evidence a tran-script of the hearing before the board, from which it appeared that, although the petitioner had been notified of the hearing about a week in advance, he had not retained counsel until the previous evening; that the board refused a request by the petitioner's counsel for a con-tinuance in order to prepare the petitioner's case properly; that the woman and another witness then gave testimony adverse to the peti-tioner in support of the charge; that the board restricted the cross-examination of the witnesses by the petitioner's counsel and excluded certain lines of inquiry to such a degree that counsel was hindered in his efforts at reasonable cross-examination; that he frequently was interrupted by members of the board in his conduct of the hearing; that the members of the board made remarks sarcastic in nature and constituting a close approach to affronts to him; and that the petitioner and his wife were permitted to testify.   The single justice without objection by the respondents heard oral testimony by the petitioner and his wife, the woman and the other accusing witness, and witnesses in favor of the petitioner, including testimony impeaching the credi-bility of the woman and testimony by the petitioner's attorney that the

attitude of the board was sarcastic and insulting. The single justice gave certain rulings and refused others and made certain findings; and by his order a decree was entered reversing the decision by the board. *Held*, that

(1) The evidence did not warrant a finding that the refusal of the board to continue the petitioner's case deprived him of a reasonable opportunity to prepare his defence before the board, nor that such refusal was an abuse of discretion;

(2) The conduct of the members of the board at the hearing disclosed an attitude toward the petitioner which was not fair, impartial and unbiased, and justified a finding by the single justice that "the petitioner was not given the full, fair and impartial hearing to which by law he was entitled";

(3) A finding by the single justice, that the decision of the board was based upon the unreliable testimony of the woman which was wilfully false and that therefore the decision was clearly wrong, was erroneous: the credibility of the witness was a matter for the board, and it was not within the power of the single justice under the statute to reverse the board's decision as clearly wrong merely because he disbelieved a witness whom the board believed;

(4) The finding, that the decision of the board was clearly wrong, was warranted in view of the improper attitude of the members of the board toward the petitioner, the decision not being supported by a heavy preponderance of evidence;

(5) The decree was justified.

PETITION, filed in the Supreme Judicial Court for the county of Suffolk on July 8, 1930, under G. L. c. 112, § 64, to reverse a decision by the respondents cancelling the petitioner's registration to practise medicine.

The Massachusetts Medical Society was permitted to intervene.

The petition was heard by *Wait*, J., a stenographer having been appointed to take the evidence. Material evidence, rulings given and refused and findings by the single justice are stated in the opinion. By his order, a decree was entered reversing the decision by the respondents. The respondents appealed.

*C. F. Lovejoy*, Assistant Attorney General for the respondents.

*R. G. Dodge*, for the intervening petitioner.

*G. L. Ellsworth*, for the petitioner submitted a brief.

RUGG, C.J. The petitioner was duly registered and entitled to practise medicine as a physician in this Commonwealth. Upon due notice and after a hearing his registra-

tion was cancelled by the respondent board for professional misconduct in that he made an agreement to perform an abortion on the person of a named woman. Thereupon this petition was brought. The Massachusetts Medical Society was allowed to intervene without objection. Its attitude is in effect in aid of the petitioner.

This proceeding is wholly statutory. The relevant statutes are three sections of G. L. c. 112. It is provided by § 61 as amended by St. 1921, c. 478, § 1, that the respondent board "after a hearing, may, by a majority vote of the whole board," cancel a registration for causes there enumerated, including the one stated in the notice to the petitioner and in the order for cancellation of his registration. Section 62 regulates the notice and the hearing before the board. Section 64 provides that upon the petition of a person whose registration has been cancelled the "supreme judicial court . . . may enter a decree revising or reversing the decision of the board, if it appears that the decision was clearly wrong . . . ." The scope of the hearing upon such a petition is not specified in the statute with further particularity. It has never been precisely determined by any adjudication. The first case arising under this statute was *Lawrence* v. *Board of Registration in Medicine*, 239 Mass. 424. The chief point there in issue was the constitutionality of the statute. It was said at page 429: "The statute affords every reasonable safeguard to protect the rights of the petitioner by requiring a hearing [before the board] at which he may be present with witnesses and counsel and providing also for hearing in court and revision and reversal of the finding of the board, if justice demands such action." The proceeding in *Davis* v. *Board of Registration in Medicine*, 251 Mass. 283, was not under but related to said § 64. It was said at page 285: "Every presumption is to be made in favor of the regularity and fairness of the methods of procedure and of the proposed action of such a board." A petition under § 64 was before the court in *Dugdale* v. *Board of Registration in Medicine*, 270 Mass. 65. It there was said at pages 68, 69: "The petitioner, in our opinion, was given a full, fair and impar-

tial hearing before the board." "The board heard the witnesses, and the statements made by the petitioner; the degree of credibility to be given to the witnesses was for the board. With this evidence of unprofessional conduct, it could not be found that the decision of the board was 'clearly wrong.'"

There are numerous other statutes providing by various forms of words for greater or less judicial supervision of the acts of administrative or executive boards or officers affecting individuals or rights of property. For example in *Swan* v. *Justices of the Superior Court,* 222 Mass. 542, 543, the jurisdiction as to removal from office by a mayor was "for a review of the charges, of the evidence submitted thereunder, and of the findings thereon by the mayor" with power to "affirm or revoke the order of the mayor." The distinction was drawn between a review and an appeal. These words conferred no power to reëxamine the witnesses and to hear the case anew, but conferred power only to examine the conclusion of the mayor as to facts, law and decision. In *Murray* v. *Justices of the Municipal Court,* 233 Mass. 186, 187, the duty of the court was to "review" the action of the officer or board making the removal, hear the witnesses and affirm the order of removal unless it was made "without proper cause or in bad faith." It was held that no retrial could be had but only a reëxamination of a proceeding already concluded for the purpose of preventing a decision not based upon an unbiased and reasonable judgment, or made without proper cause, and that the decision should not be reversed merely because the reviewing magistrate might feel that he would have decided the matter differently on the evidence. In *Selectmen of Wakefield* v. *Judge of the District Court,* 262 Mass. 477, 481, the governing statute required the judge to "review" the action of the officer or board, "hear any or all of the witnesses and determine whether or not upon all the evidence such action was justified." This was held to require an affirmative finding upon all the evidence that the action was taken upon adequate reasons sufficiently supported by evidence credible to an unprejudiced mind guided by sound judg-

ment and correct rules of law. It has been held that G. L. c. 161, § 142, and its predecessors conferring jurisdiction in equity "to review, annul, modify or amend the rulings of any state department or commission relative to street railways as law and justice may require" extend only to rulings of law and not to findings of fact. See also G. L. c. 25, § 5; c. 161, §§ 140, 141. *Paine* v. *Newton Street Railway,* 192 Mass. 90. *Donham* v. *Public Service Commissioners,* 232 Mass. 309, 328. *Boston & Albany Railroad* v. *New York Central Railroad,* 256 Mass. 600, 618. There are sundry statutes affording varying degrees of review of action taken by boards and officers exercising administrative or *quasi* judicial functions more or less analogous to the one here to be considered. See for example G. L. c. 167, § 33, as to bank commissioner, *Cosmopolitan Trust Co.* v. *Mitchell,* 242 Mass. 95, 113; c. 174, § 7; as to insurance commissioner, c. 175, §§ 5, 108, 132, 134; c. 152, § 55; *Aetna Life Ins. Co.* v. *Hardison,* 199 Mass. 181; as to minimum wage, c. 151, § 4; as to compensation for joint use of certain railroad properties, c. 160, §§ 60, 131; *Boston & Albany Railroad* v. *Public Service Commissioners,* 232 Mass. 358; as to orders affecting common carriers, c. 159, §§ 40, 47, 48; *Barrows* v. *Farnum's Stage Lines, Inc.* 254 Mass. 240; and G. L. c. 161, § 128. No aid is to be derived from a review of those statutes or decisions. Where it has been the purpose of the General Court to provide for a new trial by a court of questions determined in the first instance by a public board or officer the word "appeal" has been used. See for example as to appeals from refusal to abate taxes, G. L. c. 59, §§ 7, 65, 73, 81; c. 62, §§ 47, 51; c. 63, §§ 51, 71; c. 60 A, § 2, added by St. 1928, c. 379, § 1. Compare G. L. c. 58 A, § 6, added by St. 1930, c. 416, § 1. In other instances provision is made that relief may be sought according to ordinary procedure in equity, which implies an entire trial of the case upon its merits. G. L. c. 63, § 77; c. 65, §§ 27, 30.

The statutory words here governing are not precisely the same as those used elsewhere in our statutes. The proceeding is to be begun by a "petition." That is a word familiar

in equity.  See G. L. c. 214, § 7.  The decision of the court is to be expressed by the entry of a "decree."  That word commonly is used to describe the expression of an adjudication in equity.  *Gould's Case,* 215 Mass. 480, 482.  See *Holcombe* v. *Creamer,* 231 Mass. 99, 103–104.  The power of the court may be put forth to change a determination by the board only in the event that it appears to be "clearly wrong."  That also is a phrase familiar in equity to express the reluctance of an appellate court to change findings of fact made by a magistrate before whom the case has been tried at large and on oral testimony.  *Dean* v. *Emerson,* 102 Mass. 480, 482.  *Lindsey* v. *Bird,* 193 Mass. 200.  *Tingley* v. *North Middlesex Savings Bank,* 266 Mass. 337, 339.  The scope of the jurisdiction of the court on the petition is restricted to "revising or reversing" that which was done by the board.  That is different from a decision on appeal.  To revise in this connection means in substance the same as to review.  That does not import an entire retrial such as would arise on appeal.  It indicates a reëxamination of proceedings already had.  *Swan* v. *Justices of the Superior Court,* 222 Mass. 542, 547–548.  The procedure then is that there is not to be a new trial on the merits of the issues, with hearing and decision as in the ordinary suit instituted by petition in equity, tried before a judge who reaches his own conclusion on an independent examination of the case at large unaffected by anything which has gone before.  The decision of the board is to be examined on such a petition with every reasonable presumption in its favor and it is not to be revised or reversed without plain proof of such error or mistake as to vitiate fairness in the hearing or justice in the decision or to show that the conclusion reached by the board is palpably not in accordance with truth, is the result of error or mistake, or is unsupported in law.  *Mayor of Medford* v. *Judge of the District Court,* 249 Mass. 465.  *Selectmen of Wakefield* v. *Judge of the District Court,* 262 Mass. 477.  *Newcomb* v. *Board of Aldermen of Holyoke,* 271 Mass. 565, 568, 569.

At the trial of the case at bar before the single justice the evidence consisted of a transcript of all that occurred

at the hearing before the respondent board, an oral restatement somewhat elaborated by the petitioner and his wife and by the two accusing witnesses of the testimony given by them before the board, the oral testimony of the attorney at law who represented the petitioner at that hearing to the effect that the attitude of the board was unfair and insulting, testimony tending to impeach the veracity of Mrs. Warner, one of the witnesses against the petitioner, testimony as to the good professional reputation and standing of the petitioner, including testimony as to an inquiry into the matter by a committee of the Massachusetts Medical Society, and testimony as to how the investigation and complaint concerning the petitioner happened to be made. No objection appears to have been made to evidence. Therefore it was all entitled to its probative force. *Hubbard* v. *Allyn*, 200 Mass. 166, 171. Requests for rulings and findings presented by the petitioner were granted to the effect (1) that he was deprived of a full, fair and impartial hearing before the respondent board and that hence its decision was clearly wrong, (2) that the action of the respondent board in refusing to grant him a reasonable continuance of the hearing deprived him of a reasonable opportunity to prepare his defence and that hence its decision was clearly wrong and (3) that the presumption in favor of regularity and fairness of procedure is merely a presumption of fact amply rebutted by the evidence. Upon these the single justice indorsed "Given in substance." Requests of the respondent were denied to the effect that upon all the evidence (1) the petition must be dismissed, (2) it cannot be found that the decision of the board was clearly wrong and (3) it cannot be found that the decision of the board based upon the evidence before it was clearly wrong. Findings, rulings and order by the single justice were filed of the tenor following: "I find that the petitioner was not given the full, fair and impartial hearing to which by law he was entitled; that the decision of the Board was based upon testimony of an unreliable employee of the State Police who planned to entrap the petitioner into consenting to perform an illegal operation upon her by untrue rep-

resentations in regard to her physical condition, testimony which the petitioner was given no reasonable opportunity to meet before the Board, and which I find, after hearing, was wilfully false; that no other evidence justifies the finding of the Board; and that the decision of the Board was clearly wrong. I order that a decree be entered reversing the decision of the Board." The appeal of the respondent board brings the case here.

The investigation had its origin in a statement on file with the respondent board indicating a possible suspicion that the petitioner was an abortionist. It became the duty of the witness Townsend, a sergeant of the State police, to make an investigation. He took Mrs. Warner to the office of the petitioner and waited outside while she went in. She was a regular employee of the State police as an investigator and had been for some time. She interviewed the petitioner as an ostensible patient. On the day following Townsend and Mrs. Warner went together to the office of the petitioner. The testimony of Mrs. Warner both before the board and in court was to the effect that the petitioner on the first day agreed to perform an abortion on her and that on the second day he admitted in the presence of Townsend that he had done so. The testimony of Townsend was categorical in court that the petitioner said to him on the second day that he had agreed to perform an abortion on Mrs. Warner. His testimony before the board was susceptible of that construction. Testimony adverse to the petitioner was contradicted by the oral testimony of the petitioner and his wife at the hearing before the board and at the trial in court.

The evidence does not warrant a finding that the petitioner was deprived of a reasonable opportunity to prepare his defence before the board by its refusal to continue his case. It must be presumed that he was an intelligent man. He was given notice of the hearing and of the charge about a week in advance of the hearing. He must have realized the serious nature of the charge. He did not attempt to retain counsel until the night before the time set for the hearing. No adequate excuse appears for such conduct

by one desiring time for preparation of his case. He appeared at the hearing with an attorney and his associate attorney. The petitioner and his wife were given full opportunity to testify. Whether a continuance ought to be granted commonly rests in the discretion of the trial tribunal. *Noble* v. *Mead-Morrison Manuf. Co.* 237 Mass. 5, 16. *Blankenburg* v. *Commonwealth,* 260 Mass. 369, 378. *Commonwealth* v. *Soaris,* 275 Mass. 291, 297. There is not sufficient evidence to show abuse of discretion by the board in refusing to continue the hearing. The same is to be said about the refusal by the board to reopen the hearing several days after it had been concluded.

The petitioner was entitled to a full, fair and impartial hearing before the board. Impatience, discourtesy or bad manners, regrettable though they are in those exercising the judicial function, do not invalidate a trial or require the setting· aside of a decision provided the essentials of sound judicial conduct are not violated. *Harrington* v. *Boston Elevated Railway,* 229 Mass. 421, 433. There were at the hearing before the board numerous interruptions and comments in which three members of the board participated. There were remarks sarcastic in nature and constituting a close approach to affronts to counsel conducting the hearing for the petitioner under the embarrassment of slight opportunity for preparation. These were incompatible with an open and an unbiased mind. The reliability of the testimony of those witnesses who accused the petitioner was of the utmost importance. Reasonable cross-examination to test its truthfulness and the credibility rightly to be attributed to it was the right of the petitioner. Of course cross-examination must not be protracted to an undue length. *Commonwealth* v. *Coughlin,* 182 Mass. 558, 564. Much must be left in this particular to the discretion of the trial tribunal. Time ought not to be wasted. But it is plain that no adequate cross-examination was permitted by the board. *Goldman* v. *Ashkins,* 266 Mass. 374, 379–380. *Alford* v. *United States,* 282 U. S. 687, 691–692. That conclusion is reached having in mind that the board is composed of physicians not trained in cross-exam-

ination. The members have a right to see that their time is not frittered away. But they also must know from common experience with men and affairs and from literature indubitably reflecting human nature that reasonable cross-examination has a tendency to develop the truth. The rulings of the board in restricting the cross-examination. and in excluding lines of inquiry as expressed by the chairman show that the counsel for the petitioner was hindered in his efforts at reasonable cross-examination. The evidence of this conduct disclosed in the record need not be narrated in detail. It shows an attitude on the part of some members of the board which was not fair and impartial. The finding of the single justice on this point was warranted. *National Fire Ins. Co.* v. *Goggin*, 267 Mass. 430, 436–437. *Preston* v. *Peck*, 271 Mass. 159.

The further finding that the decision of the board was based upon the unreliable testimony of an employee of the State police which was found to be wilfully false by the single justice and that therefore the decision of the board was clearly wrong cannot be sustained. This is a finding solely as to the credibility of a single witness. Testimony of the nature of that given by the witness Warner was competent as has been decided many times, although it should be examined with great care. *Commonwealth* v. *Willard*, 22 Pick. 476. *Commonwealth* v. *Downing*, 4 Gray, 29. *Commonwealth* v. *Putnam*, 2 Allen, 301. *Commonwealth* v. *Graves*, 97 Mass. 114. See *Commonwealth* v. *DeLacey*, 271 Mass. 327. The members of the board, while perhaps not highly trained in the weighing of evidence, constitute the tribunal created by the General Court to perform that duty. It may be presumed that they are as intelligent as are jurors charged in matters of high importance with the duty of determining the witnesses to be believed and those to be distrusted and that they possess as much knowledge of human nature and insight into the motives leading the ordinary individual to action as do such jurors. It is not the province of a court empowered merely to revise and reverse the decision of such a board when it is clearly wrong to make such a finding simply

because it disbelieves a witness whom the board believed. That would be to retry the case as if it were an appeal.

The requests for rulings by the respondent board were denied rightly in view of the finding to the effect that the petitioner was not accorded a full, fair and impartial hearing. A decision which is based upon conduct wanting in impartiality, upon a biased attitude of mind and upon refusal to permit essential cross-examination within reasonable limits must ordinarily be held to be clearly wrong. It must be supported by a heavy preponderance of evidence to be permitted to stand. That is lacking in the case at bar because there was sharp contradiction in testimony upon the vital point. This finding of the single justice is enough to support the decree.

*Decree affirmed.*