FOSTER FROM GLOUCESTER, INC. & another[1] vs. CITY COUNCIL
OF GLOUCESTER & others.[2]

Essex.  April 22, 1980. — July 17, 1980.

Present: GRANT, BROWN, & NOLAN, JJ.

*Notice.  Due Process of Law,* Notice.  *License.  Quasi-Judicial Tribunal.
Administrative Law,* Hearing, Findings.  *Practice, Civil,* Extraordi-
nary review.

A holder of two licenses for the storage and sale of diesel fuel could not
challenge, either on statutory or constitutional grounds, the sufficien-
cy of a notice of a revocation hearing which failed to advise the holder
of any particular ground on which its license might be revoked where
the plaintiff, although it recorded its objection to the asserted deficien-
cy in the notice, made no effort to obtain any specification of charges
or any request for additional time to prepare its case.  [289-291]
There was no merit to a contention by a license holder that it was denied
an opportunity for reasonable cross-examination of witnesses at a revo-
cation hearing before the licensing authority.  [291-292]
Where, following public hearings to determine whether two licenses
should be revoked under G. L. c. 148, § 13, the city council, as licens-
ing authority, reached a tentative decision to revoke the licenses but,
since the decision was based in part on police reports which had not
previously been supplied to the holder, gave the holder an opportunity
to rebut the reports at a further hearing, the holder was not prejudiced
by the belated disclosure of the police reports.  [292-293]
At a license revocation hearing before a city council, as the licensing au-
thority, the license holder was not prejudiced by the council's allowing
a witness to testify from a written list of alleged violations of license
restrictions without requiring that the list be submitted in evidence or
by the council's consulting the minutes of certain of its prior pro-
ceedings.  [293]
The record of a hearing before a city council, acting as licensing authority
under G. L. c. 148, § 13, to determine whether to revoke two licenses

---

[1] Charles C. Foster, president and principal agent of the corporate
plaintiff.

[2] The mayor and the city clerk of Gloucester.

did not support the license holder's contention that the council was biased against it. [293-294]

Where the record of a license revocation hearing before a city council, acting as licensing authority under G. L. c. 148, § 13, failed to disclose either the council's construction of restrictions on the licenses or what specific conduct it considered to be in violation thereof, the correctness of the council's decision was essentially unreviewable, and the case should have been remanded to the council for a clarification of its findings. [294-296]


CIVIL ACTION commenced in the Superior Court Department on January 4, 1979.

The case was heard by *Bennett, J.*

*Stanley V. Ragalevsky* (*Michael L. Blau* with him) for the plaintiffs.

*Norman C. Ross*, City Solicitor, for the defendants.

GRANT, J. This is an action in the nature of certiorari (G. L. c. 249, § 4, as appearing in St. 1973, c. 1114, § 289) brought in the Superior Court for the purpose of quashing a decision of the city council of Gloucester (council) by which it purported to revoke two licenses for the storage and sale of diesel fuel which the council had granted to the corporate plaintiff in 1976 under the provisions of G. L. c. 148, § 13, as amended through St. 1959, c. 353, § 1.[3] The plaintiffs have appealed from a final judgment declaring the validity of the council's action. The case was submitted to a judge of the Superior Court solely on stipulated portions of the records of the council, including the stenographic transcripts of the public hearings which preceded the council's ultimate decision to revoke the licenses. As the case is here on the same records, the judge's views on the various issues are not entitled to any special weight. Compare *Southern Worcester County Regional Vocational Sch. Dist.* v. *Labor Relations Commn.*, 377 Mass. 897, 903 (1979).

Some facts are not in dispute. The individual plaintiff is the owner of certain land and buildings lying on Eastern

---

[3] The amendment of § 13 which was effected by St. 1978, c. 434, is not material to the present proceedings.

Avenue in Gloucester on which the corporate plaintiff conducts its business, which includes fueling, servicing and repairing diesel drawn tractor-trailer trucks. The buildings and the island containing the fuel pumps are located on land now zoned for industrial uses. The only safe and practical means of vehicular egress from the fuel pumps is a driveway which leads back to Eastern Avenue over land which is zoned for residential uses and in which the plaintiffs claim a nonconforming use. Except for a gasoline filling station located on the opposite side of the street, the surrounding neighborhood is predominately residential in character.

Two separate licenses for the storage and sale of diesel fuel were granted to the individual plaintiff in 1949 and 1951.[4] In 1976, following public hearings, the council, as the licensing authority under G. L. c. 148, § 13, revoked both licenses and granted new ones to the corporate plaintiff which contained the restrictions set out in the margin.[5]

---

[4] At some time a license for the storage and sale of gasoline was also granted to the individual plaintiff. That license is not at issue in these proceedings.

[5] "1. The residentially zoned area of Foster's property — not including that area shown as a way on a plan attached hereto entitled 'location of way at land of Charles C. Foster, Eastern Avenue, Gloucester, Massachusetts', dated March 1976 and signed by James Mopotoski, Surveyor, and bearing Sk. No. 40,107 — shall not be used for any commercial use whatsoever. This prohibition shall include any other crossing or recrossing of the residentially zoned area in order to gain access to the commercial area.

"2. No trailer with a refrigeration unit running shall be permitted to remain on the premises overnight. If a cab is on the premises for actual repair, the trailer must be moved elsewhere for the night.

"3. No cab being serviced nor any refrigeration unit shall be permitted to stay running after the hour of 8:00 P.M.

"4. No diesel fuel shall be dispensed after the hour of 7:00 P.M. nor before the hour of 9:00 A.M. This condition shall be enforced by preventing access or egress to or from the diesel pumps between the above mentioned hours. Foster's, Inc. shall inform the truckers of these opening and closing hours by posting conspicuous signs at prominent locations on the property.

"5. Serious effort shall be made to insure slow safe operation by the trucks entering and leaving the premises, which effort shall include the posting of conspicuous signs at prominent locations on the property, said

The plaintiffs do not challenge the validity of the actions taken by the council in 1976, although they claim that certain of the restrictions are so vague and ambiguous as to preclude their enforcement.

At a meeting of the council held on July 18, 1978, residents of the neighborhood voiced numerous complaints as to the manner in which the corporate plaintiff had been conducting its business, supposedly in violation of the restrictions. The individual plaintiff was present and addressed the council. At the conclusion of the meeting the council voted to conduct a public hearing to determine whether the licenses should be revoked, subjected to additional restrictions, or clarified. The notice of that hearing which was given to the plaintiffs and published in a local newspaper is set out in the margin.[6] Public hearings were held on September 26, October 11 and December 5, 1978, at all of which the plaintiffs were represented by counsel.

At the September 26 hearing several neighbors complained of what they regarded as numerous violations of the restric-

---

signs to contain the following wording: 'Caution — Children in Area — Drive Slowly.'

"[6]. That a curbing be installed on the Westerly side of the Way, referred to in the amended paragraph #1, and extended Easterly across the twenty-five (25) feet of residential land allowed by the Zoning Ordinance to be used for business."

[6] "NOTICE OF PUBLIC HEARING Foster of Gloucester, Inc. The City Council will hold a Public Hearing on TUESDAY, SEPTEMBER 26, 1978 at 7:30 P.M. in the Council Chamber, City Hall relative to the following subject matter: (a) As to whether or not any or all of the existing permits issued to Foster of Gloucester, Inc., located at 107 Eastern Avenue, should be revoked, or to determine whether additional restrictions should be imposed on the existing permits. (b) Or whether or not existing restrictions should be further clarified and-or reworded. Said Public Hearing will be held in accordance with Section 1.4.2.2 (e) (f) of the Zoning Ordinance. At said Public Hearing all interested persons may be heard. By Vote of the City Council Fred J. Kyrouz, City Clerk." Subsection (f) of the zoning ordinance reads: "Failure to comply with any conditions, regulations or limitations imposed by the City Council on any permit issued by it shall be deemed sufficient grounds for revoking the permit after notice and hearing being given to the person holding the permit or operating and maintaining the activity permitted."

tions found in the licenses. Further complaints were voiced at the October 11 hearing, at the conclusion of which the council voted (eight to one) to revoke the licenses, and also that "just for the sake of legality . . . [a committee of the council] meet with the [c]ity [s]olicitor to write up the reasons for the revocation and record it in the books so that there would never be a question the reasons were not given."[7]

On October 31 the plaintiffs' counsel received from the city clerk a "Proposed Notice of Decision," including a "Statement of Reasons," in which the council purported to make findings of fact and rulings of law in support of its decision. The council purported to find that the individual plaintiff had "violated on a continuous basis the conditions and restrictions prescribed in his license" and that modification or clarification of the conditions would be futile because "the neighborhood problems stem from the licensee's continuous violation of the conditions and restrictions and not from their lack of clarity or comprehensiveness."[8] Accompanying the foregoing was a letter from the city clerk stating that the council had been advised by the city solicitor that its decision should be regarded as only tentative because it was based in part on the contents of certain police reports which had not previously been supplied to the plaintiffs and of which they were unaware. Copies of those reports were supplied with the letter, which advised that the plaintiffs would be given an opportunity to address the council in explanation or rebuttal of the evidence contained in the reports.

At the request of the plaintiffs a further public hearing was held on December 5, at which the plaintiffs' counsel discussed each police report individually, and effectively demonstrated the dubious materiality of most of the reports. At the conclusion of that hearing the council voted unani-

---

[7] The city solicitor had been present at the October 11 hearing, but it does not appear that he was actively advising the council during the course of that hearing.

[8] Throughout the hearings the council appears to have regarded the individual plaintiff as if he were the sole licensee. Nothing turns on this misconception.

mously to "reaffirm" its vote of October 11. Further facts will appear as necessary to the discussion of the particular contentions raised by the plaintiffs.

The plaintiffs contend that the notice and hearing which they were accorded prior to revocation of the licenses were inadequate. Specifically, they contend that the formal notice did not inform them with sufficient particularity of the charges against them or of the action that the council might propose to take; that they were denied an opportunity to cross-examine adverse witnesses; that they were informed of the council's reliance on police reports too late to permit effective explanation or rebuttal thereof; that certain evidence was improperly admitted; that the members of the council were biased against them; that the council's decision to revoke the licenses was not supported by an adequate statement of findings and reasons; and that the restrictions in the licenses were impermissibly vague. They contend in particular that the findings that the council did make are not supported by substantial evidence.

1. *Adequacy of notice.* (a) *Under State law.* The holder of a license for the storage and sale of petroleum products is expressly entitled by statute (G. L. c. 148, § 13) to a notice and hearing before his license can be revoked. The notice given must state the ground(s) upon which the licensing authority intends to proceed with sufficient particularity to apprise the licensee of the charges to be met and enable him to prepare his case. *Higgins* v. *License Commrs. of Quincy,* 308 Mass. 142, 145-146 (1941). Compare *Manchester* v. *Selectmen of Nantucket,* 335 Mass. 156, 158-159 (1956). Mere defects in the form of the notice will not render it invalid, but the notice, taken in conjunction with the hearing, must be sufficient to accomplish substantial justice. *Higgins* v. *License Commrs. of Quincy,* 308 Mass. at 146.

The present case is not one such as the *Higgins* case or *Becker Transp. Co.* v. *Department of Pub. Util.,* 314 Mass. 522, 526-527 (1943), in both of which the notice given by the licensing authority misled a licensee as to the possible

grounds for revocation which he should be prepared to meet at the public hearing.[9]  The present case is more nearly akin to the *Manchester* case, in which the infirmity in the notice (compare note 6, *supra*) lay in its failure to advise the plaintiff of any particular ground on which her license might be revoked.  In that case the court said: "The petitioner should have asked for additional information concerning the charges that she was to meet; and if upon obtaining such information she needed further time in which to prepare her case she could have asked for a postponement . . . .  If these requests had been denied a very different question would be presented.  The petitioner, however, did none of these things.  We are of opinion that in these circumstances she is in no position to challenge the suspension of her license." 335 Mass. at 159.  See also 1 Davis, Administrative Law § 8.04, at 525-528 (1958).  Compare G. L. c. 30A, § 11(1).

In this case the plaintiffs recorded their objection to the asserted deficiency in the formal notice but made no effort to obtain any specification of charges or any request for additional time to prepare their case, very likely because the individual plaintiff had been present at the July 18 meeting of the council at which he had heard the neighbors complain of numerous violations of the restrictions found in the licenses and had heard members of the council grapple with the language which ultimately appeared in the published notice of the hearing.

(b) *Under constitutional principles.*  General Laws c. 148, § 13, expressly provides that a duly recorded license granted under that section "shall . . . be deemed a grant attaching to the land described therein and as an incident of ownership thereof running with the land and shall not be

---

[9] The plaintiffs do not seriously contend that they were misled by the notice's reference to an irrelevant subsection of the zoning ordinance.  To the contrary, at the September 26 hearing their counsel went to some length in an effort to educate the council as to the distinctions between a license granted under G. L. c. 148, § 13, and a special permit granted under a zoning ordinance.

deemed to be merely a personal privilege." The quoted language gives rise to an additional claim by the plaintiffs, a claim that the infirmity in the formal notice which has already been adverted to resulted in their having been deprived of property rights without due process. There is no longer room for doubt that a license granted under a statutory provision such as § 13 is a property right which can be revoked only upon compliance with the requirements of procedural due process (*Board of Regents of State Colleges* v. *Roth*, 408 U.S. 564, 576-577 [1972]), including the requirement of timely notice sufficient reasonably to apprise the licensee of information needed for the preparation and presentation of his case. *Mullane* v. *Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314-315 (1950).

Constitutional due process does not, however, require any particular form of notice, so long as the procedure adopted protects the substantial rights of the licensee. *NLRB* v. *Mackay Radio & Tel. Co.*, 304 U.S. 333, 350-351 (1938). "It is . . . well settled that '[n]otice of facts which would incite a person of reasonable prudence to an inquiry under similar circumstances is notice of all the facts which a reasonably diligent inquiry would develop.' . . . A party may not 'shut his eyes to the means of knowledge which he knows are at hand, and thereby escape the consequences which would flow from the notice if it had actually been received.'" *Commonwealth* v. *Olivo*, 369 Mass. 62, 69 (1975). We are of opinion that the plaintiffs' failures to request further specifications of charges and a postponement of the hearings once they had heard the evidence are also dispositive of their claim that the formal notice was constitutionally inadequate.

2. *Right to cross examination.* When the council sat on the question of the revocation of the licenses, it was acting in a quasi judicial capacity. *Higgins* v. *License Commrs. of Quincy*, 308 Mass. at 145. The plaintiffs were entitled to a full and impartial hearing which, although not necessarily conforming to the procedural and evidentiary rules applicable to proceedings in the courts, would assure that substan-

tial justice would be done. *Swan* v. *Superior Court,* 222 Mass. 542, 548 (1916). *Higgins, supra* at 145-146. *Sullivan* v. *Municipal Court of the Roxbury Dist.,* 322 Mass. 566, 577 (1948). *Mayor of Everett* v. *Superior Court,* 324 Mass. 144, 148 (1949). As one element of such a hearing, the plaintiffs were entitled to an opportunity to call their own witnesses and cross examine the opposing witnesses in reasonable fashion. *McCarthy* v. *Emerson,* 202 Mass. 352, 354 (1909). *Ott* v. *Board of Registration in Medicine,* 276 Mass. 566, 574-575 (1931). *Fairbairn* v. *Planning Bd. of Barnstable,* 5 Mass. App. Ct. 171, 182 (1977), disapproved in another respect in *Loring Hills Developers Trust* v. *Planning Bd. of Salem,* 374 Mass. 343, 349-350 (1978).

The plaintiffs were not denied an opportunity for reasonable cross examination of opposing witnesses. They concede that such cross examination was not actually forbidden but urge that it was rendered practically impossible by the alleged inadequacy of notice, by lack of subpoena power, by the absence of witnesses at the hearing[10] and by the nonadversary manner in which the hearings were conducted. We have already disposed of the notice question. The plaintiffs appear to have overlooked the power to subpoena witnesses under G. L. c. 233, § 8 (see *Bloom* v. *Worcester,* 363 Mass. 136, 162-163 [1973]), and cannot now complain of the absence of witnesses who could have been subpoenaed. *Richardson* v. *Perales,* 402 U.S. 389, 397, 404-405 (1971). Although the hearings were not conducted in adversary fashion, there is nothing to suggest that cross examination would have been impracticable. Compare *Richardson, supra* at 400-401, 410; *Mathews* v. *Eldridge,* 424 U.S. 319, 348-349 (1976). When the plaintiffs' counsel demanded of the city clerk an opportunity to rebut the police reports, the reply was that he might call as witnesses whomever he might like.

3. *Late disclosure of the police reports.* The plaintiffs were clearly entitled to disclosure of all the evidence on which the council relied in reaching its decision. *Moran* v.

---

[10] We are not told what the absent witnesses would have said.

*School Comm. of Littleton*, 317 Mass. 591, 594-595 (1945). *Haley's Case*, 356 Mass. 678, 682-683 (1970). *Tyler* v. *Swenson*, 427 F.2d 412, 416 (8th Cir. 1970), and cases cited. The plaintiffs have cited no case, and we have found none, which holds that mere tardiness of disclosure invalidates the ultimate administrative decision. See Annot., 18 A.L.R. 2d 552, 583-586 (1951). There is no basis in the record for concluding that the hearing at which the plaintiffs' counsel undertook to rebut the contents of the police reports was regarded by the council as a mere formality, nor is there any substantial basis for concluding that the council's earlier "tentative" decision prevented it from considering the rebuttal in good faith. We are not persuaded that the plaintiff was prejudiced by the belated disclosure, and we see no harm in expressing our view that the live testimony at the first two hearings warranted findings of at least one violation of the unambiguous portion of each restriction found in the licenses.

4. *Allegedly erroneous admission of evidence.* There is no merit to the contentions that the council committed prejudicial error (a) in allowing a witness to testify from a written list of alleged violations of the license restrictions without requiring that the list be submitted in evidence and (b) in the council's consulting the minutes of certain of its prior proceedings. It does not appear that any objection was voiced to the first procedure; if there was error (as to which see *Moran* v. *School Comm. of Littleton*, 317 Mass. at 596-597), it does not appear to have been prejudicial. The limited purpose for which the minutes were consulted was clearly disclosed; again, there was no objection.

5. *Bias.* The transcripts of the hearings reveal expressions of irritation and impatience with the plaintiffs' counsel on the part of some of the members of the council, attributable at least in part to the council's failure to obtain considered legal advice sooner than it did. Compare *Harris* v. *Board of Registration in Chiropody (Podiatry)*, 343 Mass. 536, 540 (1962). However, "[i]mpatience, discourtesy or bad manners, regrettable though they are in those exercising the judi-

cial function, do not invalidate a trial or require the setting aside of a decision provided the essentials of sound judicial conduct are not violated." *Ott* v. *Board of Registration in Medicine*, 276 Mass. at 574. In the *Ott* case the conclusion that the administrative board had not been fair and impartial rested on evidence that the board had unreasonably restricted the plaintiff's cross examination of crucial witnesses. 276 Mass. at 575. No such restriction has been shown in the instant case. Although the comments of one member of the council consistently reflected unseemly haste on his part, the hearings do not appear to have been abbreviated to suit his inclination and, viewed as a whole, have not been shown to have lacked impartiality. Contrast *Harris, supra* at 540-541. There is every presumption in favor of the honesty and sufficiency of the motives actuating public officers in actions ostensibly taken for the general welfare. *General Outdoor Advertising Co.* v. *Department of Pub. Works*, 289 Mass. 149, 192, appeal dismissed, 296 U.S. 543 (1935). *Kidder* v. *City Council of Brockton*, 329 Mass. 288, 289 (1952).

6. *Statement of reasons and findings.* The council expressly based its decision solely on its conclusion that the licensee had "violated on a continuous basis the conditions and restrictions" of the licenses that the "the neighborhood problems stem from the licensee's continuous violation of the conditions . . . and not from their lack of clarity or comprehensiveness."[11] There is no question that the reasons

---

[11] Accordingly, we need not decide whether a statement of reasons is required in a case such as the present, in which an administrative decision is reached on the basis of evidence introduced in quasi judicial proceedings which are not subject to the requirements of G. L. c. 30A, § 11(8). See *Hornsby* v. *Allen*, 326 F.2d 605, 608-609 (5th Cir. 1964); *Corr* v. *Mattheis*, 407 F. Supp. 847, 853-854 (D.R.I. 1976); *Trumbull Div., Owens-Corning Fiberglass Corp.* v. *Minneapolis*, 445 F. Supp. 911, 917 (D. Minn. 1978). Compare *Cefalo* v. *Board of Appeal of Boston*, 332 Mass. 178, 181 (1955), with *Kidder* v. *City Council of Brockton*, 329 Mass. at 289-291, *Johnson Prod., Inc.* v. *City Council of Medford*, 353 Mass. 540, 543, appeal dismissed and cert. denied, 392 U.S. 296 (1968), and *Bennett* v. *Aldermen of Chelsea*, 361 Mass. 802, 807 (1972). Contrast *Leen* v. *Assessors of Boston*, 345 Mass. 494, 499-503 (1963).

given are facially sufficient to warrant the council's action. *Fallon* v. *Street Commrs. of Boston,* 309 Mass. 244, 246-247 (1941). The difficulties are that nothing in the council's "Statement of Reasons" or elsewhere in the record discloses either the council's construction of the "conditions and restrictions" in the licenses or what specific conduct it considered to be in violation thereof. The record does disclose serious confusion on the part of several members of the council as to the correct interpretation of some of the restrictions, several of which are ambiguous in part and were seriously misunderstood by witnesses adverse to the plaintiffs. The record further discloses that the greater part of the evidence before the council (both the live testimony and the police reports) was either entirely immaterial to the question whether any of the restrictions had been violated or was material to that question only if some of the restrictions were interpreted in ways which ignored their plain language; and that more than one member of the council was inordinately concerned with the plaintiffs' alleged failure to compromise with the neighbors on the proper interpretations which should be placed on facially ambiguous restrictions. Considerable weight seems to have been accorded to supposed admissions of wrongdoing made by the individual plaintiff "[t]he last time we met here [July 18] without the attorney present."

As matters now stand, the correctness of the council's decision is essentially unreviewable. Compare *Leen* v. *Assessors of Boston,* 345 Mass. 494, 501-502 (1963), and cases cited; *Rhodes* v. *State Examrs. of Plumbers,* 4 Mass. App. Ct. 767, 768 (1976). Thus, it is impossible to determine from the present record whether that decision was based on interpretations of the license restrictions which were arbitrary, unreasonable or capricious (see *Finkelstein* v. *Board of Registration in Optometry,* 370 Mass. 476, 478 [1976]; *Rhodes* v. *State Examrs. of Plumbers,* 4 Mass. App. Ct. at 768) or whether the decision was reached after due consideration of the relevant factual issues. See *Bowman Transp., Inc.* v. *Arkansas-Best Freight Sys., Inc.,* 419 U.S.

281, 285-286 (1974). The certiorari statute (G. L. c. 249, § 4) authorizes the reviewing court to "enter judgment quashing or affirming [administrative] proceedings or *such other judgment as justice may require*" (emphasis supplied). The italicized words authorize the Superior Court to remand a case to the administrative tribunal for further proceedings. Compare *Roberts-Haverhill Associates* v. *City Council of Haverhill*, 2 Mass. App. Ct. 715, 717-719 (1974) (decided under G. L. c. 40A, § 21, as in effect prior to St. 1975, c. 808, § 3).

We are of opinion that that course should have been followed in the instant case and that the Superior Court should have retained jurisdiction over the case and remanded it to the council with a direction that the council prepare and submit to the court a detailed, comprehensive exposition of all the subsidiary facts found by it with respect to each violation of each of the restrictions found in the licenses which was relied on by the council in reaching its ultimate conclusions that there had been continuous violations of those restrictions. Such findings will obviate the difficulties in understanding the actual basis of the council's decision which have been adverted to in this part of our opinion. Only with the benefit of such findings will the court be in a position to determine whether the council's decision is tainted with error of law or abuse of discretion, or comports with substantial justice.

7. *Standard of review of the council's findings of fact.* Although the question is not wholly free from doubt, we are of opinion that the council's findings of fact must be reviewed under the "substantial evidence" standard rather than the "arbitrary, capricious or an abuse of discretion" standard. See and compare *Saxon Coffee Shop, Inc.* v. *Boston Licensing Bd.*, 380 Mass. 919, 922-925, 930 (1980), and cases cited. Contrast *McSweeney* v. *Town Manager of Lexington*, 379 Mass. 794, 799-800 (1980). Of course, no review of those findings can be had until they are received by the court.

The judgment is vacated, and the case is remanded to the Superior Court for further proceedings not inconsistent with this opinion.

*So ordered.*