**Arthur GUTTADAURO d/b/a
KING ARTHUR'S
vs.
Harry TOLTZ (in his capacity
as chairman and
Louis LEAH and James VAHEY
(as they are members of the
CHELSEA EXCISE BOARD**

**No. 57095**

Superior Court/Suffolk, ss.
Commonwealth of Massachusetts

**October 29, 1982**

**Richard I. Clayman,** counsel for plaintiff
**City of Chelsea,** counsel for for
defendant

**RULINGS, ORDER AND MEMORANDUM OF DECISION ON THE PLAINTIFF GUTTADAURO'S AMENDED PRAYER NUMBERED 2 WHEREIN HE SEEKS INTERLOC- UTORY RELIEF, AS SET OUT THEREIN, ON THE DECLARATORY JUDGMENT PRIOR TO A HEARING ON THE MERITS**

**Introduction.**

This is a motion brought by plaintiff Arthur Guttadauro d/b/a King Arthur's Lounge and Motel requesting that this Court order an interlocutory declaratory judgment that defendants, as they are the chairperson and members of the Chelsea Excise Board (hereinafter "the Board"), must allow Guttadauro reasonable cross-examination of witnesses who are currently appearing before the Board at hearing before it.

**Background.**

On July 23, 1982 an altercation which achieved great public notoriety occurred at Guttadauro's commercial premises, King Arthur's Lounge which is situated in Chelsea. One person was killed and several others were seriously injured as a result of the altercation. Ultimately a Suffolk County Grand Jury indicted, among others, four City of Everett Police Officers for first-degree murder in connection with the altercation and its assaults. One John McLeod is one of the Everett police officers who has been indicted.

Some weeks after the altercation, on September 16, 1982, the Board commenced hearings concerning the suspension or revocation of Guttadauro's license to operate the Lounge. The Board called McLeod as a witness. McLeod testified during direct examination about late night "after hours" drinking at the Lounge July 23, 1982. Guttadauro's counsel was present at the Board meeting and despite his attempts to cross-examine McLeod the Board denied him the opportunity to do so in any reasonably acceptable manner. This was despite the fact that Guttadauro's counsel claimed his cross-examination could damage

McLeod's credibility and reveal bias/personal interest in the matter. Guttadauro's counsel more specifically alleged he could establish McLeod had a poor reputation for truth and veracity, that he was intoxicated on the night in question and that McLeod had threatened and assaulted Guttadauro that night as well.

In sum, McLeod answered questions by the Board concerning activity and conduct during the night in question on direct examination; however the Board allowed him to refuse to answer meaningfully any questions on cross-examination which would impeach his credibility. Guttadauro asks this Court to enter a preliminary declaratory judgment to respond to what he describes as arbitrary and capricious Board action which has deprived him of his right to substantive and procedural due process of law under both the United States and Massachusetts Constitutions.

**Rulings and Memorandum of Decision.**

Taking the particular circumstances of this case into account, this Court believes that in the interest of justice it must grant the preliminary declaratory judgment plaintiff seeks. No trier of fact has yet ascertained what in fact occurred at the Lounge on the night of July 23, 1982. If Guttadauro's license is capable of being revoked before those facts can be legally ascertained, due process requires, at minimum, that Guttadauro be allowed to defend himself fully against allegations leveled against the operation of his business which is his livelihood. This appears especially true when great weight is being given to the words of a witness who, quite conceivably, has a great self-interest in making Guttadauro look as irresponsible and in violation of the law as possible. While this Court makes no assumptions or determination here as to the truthfulness of McLeod's testimony, neither should the Board. Both the Court and the Board should adjudicate this matter as even-handedly as possible. Indeed, theoretically, and may one dare say practically, cross-examination could help the Board decide what in fact occurred on that crucial evening.

It is within the scope of the Court's authority to enter a declaratory judgment of this type. True, while only rarely should a court preliminarily entertain a complaint seeking a declaratory judgment against an administrative tribunal, "However, by force of a recent statutory amendment, an action for declaratory judgment will be to enjoin and to obtain a determination of the legality of the administrative practices of any governmental agencies when such practices are alleged to be . . . unconstitutional . . . ." Mass. Practice, Equitable Remedies, Vol. 31, pp. 402-403. The amendment referred-to has been incorporated as part of G.L. c. 231A, sec. 2:

"Said procedure under Section one may be used in the Superior Court to enjoin and to obtain a determination of the legality of the administrative practices and procedures of any municipal, county or state agency or official which practices on procedures are alleged to be in violation of the Constitution of the United States or the laws of the Commonwealth

. . .

The foregoing enumeration shall not limit or restrict the exercise of the general powers conferred in Section one in any proceeding where declaratory relief is sought, in which a judgment or decree will terminate the controversy or remove an uncertainty." G.L. c. 231A, sec. 2 Pocket p. 49-50.

This Court believes entering a preliminary declaratory judgment here is important and follows the policy found in cases such as **Foster from Gloucester, Inc. et al. vs. City Council of Gloucester,** 407 N.E. 2d 363. **Foster,** a 1980 Appeals Court decision, endorses the preferable view that when a public body examines a license revocation issue it sits as a quasi-judicial body and licensees are "entitled

to a full and impartial hearing which would assume that substantial justice is done. As one element of such a hearing, the plaintiffs were entitled to an opportunity to call their own witnesses and cross-examine the opposing witnesses in reasonable fashion.'' **Id.** at 368.

This philosophy is also embraced in **Richard O'Neill & Lawrence Caldwell v. Town of Nantucket, et al.,** CA 82-0775-DCMA (August 13, 1982. In that action the Court says that while cross-examination is not always a fixed requirement of due process, . . . ''(W)ere this a (license) revocation based on misconduct by the plaintiffs themselves (as is this action), the situation could well demand the full panoply of procedural rights, including cross-examination.'' (Parenthesis added). **Id.** at 8. Hence the District Court confirmed as recently as August, 1982 that there are circumstances where opportunity to cross-examine is not only preferable but mandatory.

This Court cannot overlook the fact that the Board is relying on testimony of a witness who purportedly has a personal interest in the proceedings at hand. Eventually another finder of fact may have to make a legally binding determination of who was at fault that evening at the Lounge. Various witnesses will testify in order to aid in that fact-finding. Cross-examination will play a pivotal role in ascertaining which witnesses' account is most credible. There seems no reason why the Board should use a less comprehensive and dependable method of fact finding in its determiniation a method that would never be acceptable in any courtroom in the United States. This seems to be what due process is all about. A Board decision against Guttadauro could cause irreversible harm to his livelihood. Hence, this Court believes that it is not an appropriate time to dilute due process standards.

Finally, it is important to note that this Court does not believe the exhaustion of administrative remedies doctrine is at issue here. Guttadauro seeks to uphold his constitutional rights; nowhere does he imply that the Excise Board is not the proper forum for the issue at hand. Indeed he is willing to go through with the quasi-judicial proceeding which awaits him in Chelsea. He makes no attempt to avoid it. Guttadauro only wants to insure such a proceeding gives him a fair chance to argue his side of the issue in a manner consistent with courtroom procedure as we know it. This Court sees no reason why justice would not be administered in a more effective, desirable manner if he were given the opportunity to cross-examine adversary witnesses.

**Order.**

On the basis of the above rulings, a preliminary declaratory judgment shall enter allowing the plaintiff's amended prayer numbered 2.

**Paul G. Garrity**
**Justice of Superior Court**