HENRY M. LEEN, trustee, vs. BOARD OF ASSESSORS OF
BOSTON

(and two companion cases between the same parties).

Suffolk.   January 9, 1963. — February 28, 1963.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, SPIEGEL,
& REARDON, JJ.

*Taxation*, Appellate Tax Board: findings, informal procedure, formal
procedure, appeal to Supreme Judicial Court, requests and rulings.
*State Administrative Procedure Act.   Quasi Judicial Tribunal.   Value.
Evidence*, Of value.   *Words*, "Depreciation," "Obsolescence."

Upon an appeal to the Appellate Tax Board under the informal procedure
established under G. L. c. 58A, § 7A, from a denial by assessors of a
taxpayer's application for an abatement of a real estate tax, an order
by the board, which accompanied a decision merely stating the amount of
a partial abatement allowed by it and which granted a request for a rul-
ing of law by the assessors, did not constitute a question of law "raised
by the pleadings" and was not a "report," so that, where there was no
agreed statement of facts, an appeal to this court from the decision was
not grounded upon any matter of law open under the exceptions in the
taxpayer's waiver of right of appeal, and the decision must be affirmed.
[496–497, 499]

On the records of a case before the Appellate Tax Board under the formal
procedure set forth in G. L. c. 58A, § 7, and companion cases under the
informal procedure set forth in § 7A, all involving abatements sought
of taxes on the same real estate, a report of findings made by the board
on request in the case under the formal procedure was not to be treated
as also a discretionary report in the cases under the informal procedure.
[497–498]

The Appellate Tax Board, upon making a decision in a case under the
informal procedure established by G. L. c. 58A, § 7A, was excused by
§ 10 of the State Administrative Procedure Act, G. L. c. 30A, from
compliance with § 11 (8) requiring agency decisions to be "accompanied
by a statement of reasons for the decision, including determination of
each issue of fact or law necessary to the decision."   [498–499]

Upon an appeal to the Appellate Tax Board under the formal procedure
established by G. L. c. 58A, § 7, from a denial by assessors of the tax-
payer's application for abatement of a real estate tax, a report of find-
ings, filed by the board pursuant to the taxpayer's request under § 13
with a decision allowing a partial abatement, did not comply with the
requirements of § 11 (8) of the State Administrative Procedure Act,
c. 30A, that the board set forth the reasons and findings of fact underly-

ing its decision and furnished no guide to this court on review under
§ 14 (8) of c. 30A, where it appeared that the value of a large tract
containing buildings and structures used for railroad and business
purposes was the sole issue, that the record contained more than eleven
hundred pages of testimony and many lengthy exhibits, and that the
board's only findings on the issue of value were that "upon a considera-
tion of [a view and] all the evidence admitted as relevant and the uses
to which the . . . [property was] reasonably adapted, . . . the . . .
[then] use of the property . . . [was] its highest and best use, [and]
. . . the fair cash value" was a specified amount; the decision must be
reversed and the case remanded to the board for further proceedings.
[499–502]

A contention, that G. L. c. 30A, § 11 (8), when applied to a report of
findings by the Appellate Tax Board under c. 58A, § 13, in a formal
proceeding for abatement of a real estate tax in which the only issue of
fact was the value of the property, should be construed as requiring only
a bare finding of the value underlying a decision by the board granting
a partial abatement, must be rejected as a complete misconception.
[502–503]

There was no error on the part of the Appellate Tax Board in a proceed-
ing for abatement of a real estate tax in granting a request by the
assessors for a ruling that in determining the fair cash value of prop-
erty used for a railroad terminal the value of the property "for any
special purpose and any other uses to which the property might be
profitably put are to be considered," although the board found that
"the . . . [then] use of the property . . . [was] its highest and best
use"; nor was the granting of the request an implied finding that the
operation of the terminal was considered profitable.   [503–504]

In a proceeding for abatement of a real estate tax on property used as
a railroad terminal, there was no error on the part of the Appellate Tax
Board in granting a request by the assessors for a ruling that "Inas-
much as the property . . . has been joined with the lines of . . . [two
railroads], its value must be considered in reference to the use to which
it is adapted, and which is now made of it in connection with the prop-
erty of the railroads"; no reference to the identity of any particular
owner to whom there might be a special value was intended by the
board.   [504]

At the hearing by the Appellate Tax Board in a proceeding for abatement
of a real estate tax on buildings and land used for a railroad terminal,
it would not have been error to admit testimony by a real estate expert
of the sale price of property in the same city, containing no buildings,
sold by a railroad to an insurance company, notwithstanding certain
asserted "important distinctions" between the two properties [505–507];
nor would it have been error to admit in evidence an agreement by the
taxpayer to sell a part of the terminal to one who was to give a long-
term lease back to the taxpayer, even though the obligations of both the
taxpayer and the purchaser were conditioned upon securing required
approvals of others.   [507]

APPEALS from decisions by the Appellate Tax Board.

*Joseph Auerbach (John Hand & Robert K. Lamere* with him) for the taxpayer.

*William H. Kerr* for the Board of Assessors of Boston.

WILKINS, C.J.   These are three appeals, originally by The Boston Terminal Corporation, the taxpayer,[1] from decisions of the Appellate Tax Board with respect to taxes assessed on the South Station terminal and adjacent real estate on Atlantic Avenue, Boston, for the years 1957, 1958, and 1959.   The basis of the taxpayer's complaints was overvaluation and the failure of the appellee board of assessors to act upon petitions for abatement within three months. See G. L. c. 59, § 64, as amended.

The taxes were assessed upon a valuation of $12,221,800. In 1957 the tax was $1,051,074.80, in 1958 $1,136,627.40, and in 1959 $1,236,846.16.   The cases were heard together.   The tax board found that the fair cash value was $10,525,000, there having been an overvaluation of $1,696,800, and granted abatements of lesser amounts than those sought by the taxpayer.

The petitions relating to the taxes for 1957 and 1958, respectively cases numbered 12,881 and 12,880, are under informal procedure.   See G. L. c. 58A, § 7A (as appearing in St. 1945, c. 621, § 3).   That relating to the taxes for 1959, case numbered 12,879, is under formal procedure.   See G. L. c. 58A, § 7 (as amended through St. 1953, c. 654, § 25).

### THE TWO CASES UNDER INFORMAL PROCEDURE.

Pursuant to G. L. c. 58A, § 7A, the taxpayer filed "Waiver of appeal and election of informal procedure," which read, "The appellant hereby waives any right of appeal to the Supreme Judicial Court from any decision of the Appellate Tax Board, except upon questions of law raised by the pleadings, or by an agreed statement of facts, or shown by

---

[1] On September 7, 1962, The Boston Terminal Corporation's petition for reorganization under § 77 of the Bankruptcy Act was allowed in the United States District Court for the District of Connecticut, and on September 21, 1962, Henry M. Leen was appointed trustee of its property.   In this court there has been substituted as appellant "Henry M. Leen, Trustee of the property of The Boston Terminal Corporation, Debtor in Reorganization."

the report of the board, and elects the informal procedure for the determination of the petition for abatement in the above named appeal." Since the appellee board of assessors did not elect to transfer the appeal to formal procedure, the waiver continued to be effective (§ 7A).

In each case the decision was confined to a statement of the abatement figures. There was no document entitled "report," but on the day of the decision orders were entered granting requests of the appellee board of assessors. Each appeal is founded upon alleged errors of law in granting four of them, but does not present any of the three types of questions of law open under the language of the waiver and of § 7A. There was no "agreed statement of facts." Orders disposing of requests for rulings do not constitute questions of law raised by the pleadings. Nor were they reports. To hold otherwise upon appellate review would go far toward wiping out, apart from rulings on evidence, all distinctions between questions open under formal procedure and those open under informal procedure.

As hereinafter appears, the tax board, pursuant to the taxpayer's request in the case under formal procedure, filed "findings of fact and report," as required by G. L. c. 58A, § 13 (as amended through St. 1957, c. 522).[1] The findings bear only the number of, and purport to relate solely to, the case under formal procedure. In *Boston Five Cents Sav. Bank* v. *Assessors of Boston,* 317 Mass. 694, 701–702, it was said that under the informal procedure the making of a report of findings of fact, although seasonably requested, is discretionary with the board, and that the provision in § 7A "for a right of appeal upon questions of law 'shown by the

---

[1] This section reads in part: "The board shall make a decision in each case heard by it and may make findings of fact and report thereon in writing. . . . Except in cases heard under the informal procedure authorized by section seven A, the board shall make such findings and report thereon if so requested by either party within ten days of a decision without findings of fact. Such report may, in the discretion of the board, contain an opinion in writing, in addition to the findings of fact and decision. . . . The record in such an appeal [to the Supreme Judicial Court] shall include copies of . . . the petition upon appeal to the board, the answer to the petition and other pleadings, if any, filed with the board, the report and findings of the board including any opinions filed, all requests for rulings of law and [requests for] findings of fact and the disposition of each by the board . . . ."

report of the board' does not import that there must necessarily be such a report.   It is applicable only in the event that there is such a report.''   The taxpayer contends that the board should be deemed to have made voluntary findings of facts and reports in the 1957 and 1958 cases ''for at least the limited purpose of revealing error'' in the rulings of law.   Under the wording of §§ 7A and 13 this contention cannot be accepted.   The plain fact is that the tax board made no finding at all in the two cases under informal procedure.

There is nothing unfair or unconscionable in this result. There was no compulsion upon the taxpayer to elect the informal procedure, which was set up to expedite the hearing of tax appeals and to reduce the expense of the litigation.

As appears below in our consideration of the case under formal procedure, even if the taxpayer had had the benefit of the findings and report, no error appears in the granting of the requests.

The argument that there should have been compliance with § 11 (8) of the State Administrative Procedure Act, c. 30A, is answered by § 10 of that act (inserted by St. 1954, c. 681, § 1), which provides in part: ''Unless otherwise provided by any law, agencies may . . . (2) make informal disposition of any adjudicatory proceeding by stipulation, agreed settlement, consent order or default; (3) limit the issues to be heard or vary the procedures prescribed by section eleven, if the parties agree to such limitation or variation . . ..''

The taxpayer cites two cases on this issue.   In *Milchen Furniture Co. Inc.* v. *Assessors of Quincy,* 335 Mass. 766, the opinion does not mention requests.   Its reference to the absence of rulings is not to the absence of rulings upon requests and in no way implies that action upon requests would have been reviewed.   In *Irving Usen Co. Inc.* v. *Assessors of Boston,* 309 Mass. 544, it is true that the original papers show that the correctness of the denial of requests for rulings was argued.   But the original record, by stipulation, contains a copy of a lease the interpretation of which

was the basis of the opinion of this court. That opinion does not mention requests, and we think there was no conscious judgment expressed on the question before us. To any extent that there was, it was not a correct view of the procedure permissible under § 7A. See *Cohen* v. *Assessors of Boston,* 344 Mass. 268, 271.

As there was no question of law raised by the pleadings, no "agreed statement of facts," and no report by the board, there was no ground of appeal open under the waiver, and the decision in each of the two cases under informal procedure must be affirmed.

*So ordered.*

### THE CASE UNDER FORMAL PROCEDURE.

On October 16, 1961, the Appellate Tax Board filed (1) a "decision" which was confined to a statement of the abatement figures and (2) an order making the same rulings on four requests of the appellee board of assessors as in the two cases under informal procedure. Pursuant to a request by the taxpayer made under c. 58A, § 13, the board filed "findings of fact and report." The case is here with a transcript of the evidence and with exhibits.

1. A fundamental contention of the taxpayer is that the tax "board did not state in the findings adequate reasons for its decision or make adequate subsidiary findings of fact as required by the State Administrative Procedure Act . . . § 11 (8)."[1]

The findings describe the property by bounds; state the number of square feet as 1,351,629; and give the types of zoning, which are (a) manufacturing, with the height of buildings not to exceed 155 feet, and (b) on Summer Street to a depth of 100 feet, general business. Then is given an itemization of buildings and structures, chiefly a five story granite "headhouse" built in 1898–1900 and a "concourse" where there are gates leading to the tracks of The New York, New Haven and Hartford Railroad Company and the

---

[1] "Every agency decision . . . shall be accompanied by a statement of reasons for the decision, including determination of each issue of fact or law necessary to the decision . . .."

Boston and Albany Railroad Company. This is followed by twelve short numbered paragraphs enumerating some physical characteristics of the buildings and structures. The first such paragraph closes with the statement, "Various tenants occupy the headhouse." The second such paragraph states that the concourse is rented to about fifty-one concessions from which gross income in each of the years 1957, 1958, and 1959 was approximately $700,000.

Next come eight unnumbered paragraphs, the last two dealing with requests for rulings. The first paragraph is, "The approximate rentable area of the headhouse, concourse and other buildings amounted to approximately 608,000 square feet." The second such paragraph is prefaced by a recital that there was evidence of the number of passenger trains arriving and departing daily from the station in each of the years 1953 to 1959, inclusive, and then states, "The number of passengers using the station for each of the years . . . showed 13,899,548 for the year 1953, a high of 15,431,243 for 1956, and a low of 8,113,221 for 1959."

In the third such paragraph it is said that there was evidence (1) of the number of square feet occupied by each of the tenants and the rent paid, actual or estimated; (2) of gross receipts, actual or estimated, based on rental values for the three years; and (3) of operating expenses, estimated, and the resulting net income. The remainder of this paragraph reads, "One of the expert witnesses for the appellant testified that in his opinion the actual rental value of the property was approximately $1,400,000 for each of the years . . . and operating expenses, estimated, of $250,479 for each of those years, while a second expert witness for the appellant testified that the rental value, in his opinion, was approximately $1,035,000, and operating expenses, estimated, of $311,575 for each of those years." No contrary evidence is cited anywhere in the findings. The fourth such paragraph is: "Experts testified as to the construction of the buildings, their age, obsolescence, estimated depreciation and cost of reproduction. Photographs and plans of the land and buildings were introduced in evidence."

The fifth such paragraph is: "Experts for both parties gave their opinions of the fair cash value . . . as of January 1, 1959, and gave their reasons for such opinions. The value attributable to these properties by these witnesses varied from $4,430,954 to $16,039,000.''[1]

The sixth unnumbered paragraph contains the only findings as to the disputed issue of valuation, and, in its entirety, reads: "From the evidence and the view, and upon a consideration of all the evidence admitted as relevant and the uses to which the properties were reasonably adapted, the board finds that the present use of the property is its highest and best use, that the fair cash value of the real estate involved in this appeal was $10,525,000, and granted [*sic*] an abatement of $171,716.16, together with penalty interest of $3,892.81, making a total of $175,608.97.''

Plainly there has not been compliance with G. L. c. 30A, § 11 (8). Upon a record of 1110 pages of testimony, in addition to many lengthy exhibits, the tax board has disposed of the vital issue in a single sentence. Not only that, but, enshrouding its finding with a vague reference to "all the evidence,'' the board has disposed of that issue in such a way that both the taxpayer and ourselves in attempting to exercise our function of appellate review under G. L. c. 30A, § 14 (8),[2] are left without any guide to its reasons.

---

[1] Two expert witnesses for the taxpayer respectively testified to a fair cash value on January 1, 1959, of $4,430,954 and $4,630,000. Two expert witnesses for the board of assessors respectively testified to a fair cash value of $15,300,000 and $16,039,000. The average of their figures is $10,099,988.50. As noted elsewhere, the tax board found a fair cash value of $10,525,000, which was $1,696,800 less than the assessed value of $12,221,800.

[2] General Laws c. 58A, § 13 (as amended through St. 1957, c. 522), states in part: "From any decision of the [tax] board upon an appeal from a decision or determination . . . of a board of assessors . . . an appeal . . . may be taken to the supreme judicial court by either party to the proceedings before the board who has not waived such right of appeal. The decision of the board shall be reviewed in accordance with the standards for review provided in paragraph (8) of section fourteen of chapter thirty A.''

General Laws c. 30A, § 14 (8) (inserted by St. 1954, c. 681, § 1), reads in part: "The court may affirm the decision of the agency, or remand the matter for further proceedings before the agency; or the court may set aside or modify the decision, or compel any action unlawfully withheld or unreasonably delayed, if it determines that the substantial rights of any party may have been prejudiced because the agency decision is — (a) In violation of constitutional provisions; or (b) In excess of the statutory authority or jurisdiction of the

There is a duty to make adequate subsidiary findings, a duty which is not performed by making one almost meaningless statement.

The board of assessors argues that there was only one issue of fact necessary to the decision, namely, the fair cash value of the property on January 1, 1959, and that § 11 (8) "should be construed to require only findings of subsidiary facts necessary to the ultimate conclusion." This complete misconception must be rejected. Appellate review in abatement cases cannot be permitted to become a farce. There are persuasive analogies. In *Herson's Case,* 341 Mass. 402, 407–408, it was said that the Industrial Accident Board "should find expressly those subsidiary facts upon which it relies. It should not leave counsel and the courts, without any reasonable guidance, to search long records for fragments of evidence, which, if believed, cumulatively might warrant some inference sufficient to support whatever conclusion the board has reached." In *Bay State Harness Horse Racing & Breeding Assn. Inc.* v. *State Racing Commn.* 342 Mass. 694, 701, there was stressed the duty of the State racing commission to make adequate subsidiary findings of fact to support its decision to the end that a reviewing court from the record before the commission could ascertain, as contemplated by c. 30A, § 14 (8), whether the decision and the findings were supported by substantial evidence and otherwise complied with statutory standards. *Salisbury Water Supply Co.* v. *Department of Pub. Util.* 344 Mass. 716, 718.

The foregoing considerations are not affected by the circumstance that the value cannot "be proved with mathematical certainty and must ultimately rest in the realm of opinion, estimate and judgment," or the circumstance that the tax board could select the various elements of value as

agency; or (c) Based upon an error of law; or (d) Made upon unlawful procedure; or (e) Unsupported by substantial evidence; or (f) Unwarranted by facts found by the court on the record as submitted or as amplified under paragraph (7) of this section, in those instances where the court is constitutionally required to make independent findings of fact; or (g) Arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law."

shown by the record and from them form its own independent judgment. *Assessors of Quincy* v. *Boston Consol. Gas Co.* 309 Mass. 60, 72. See *State Tax Commn.* v. *Sears Roebuck & Co.* 344 Mass. 471, 477.

2. The taxpayer contends that four requests of the assessors were given in error, and urges that they "must be reviewed in light of the facts to which they relate" and not be considered merely as abstract propositions. As the burden is upon the appealing party to show harmful error, the taxpayer is placed in a difficult position by the inadequate character of the report. In truth, there are so few facts that the taxpayer has to refer to certain testimony or its absence as indicating what fact might, or might not, have been found in the light of which the requests should have been considered. This resembles the intolerable situation described in the quotation from *Herson's Case, supra.* The evidence here is far too voluminous for us feasibly to perform the chore which the failure to find facts imposed upon us in *American Flexible Conduit Co. Inc.* v. *State Tax Commn., ante,* 146, 147.

(a) The third request was, "In determining the fair cash value of the property in issue, the value of the property for any special purpose and any other uses to which the property might be profitably put are to be considered."

The taxpayer argues that the granting of this request was error because there was a finding that "the present use of the property . . . [is] its 'highest and best use.' " It does not follow, however, that the tax board's decision was influenced by a principle which is erroneous in the context of its decision. Cf. *Massachusetts Gen. Hosp.* v. *Belmont,* 233 Mass. 190, 209. The principle embodied in the request is elementary as stating the general duty of the tax board. *Assessors of Quincy* v. *Boston Consol. Gas Co.* 309 Mass. 60, 64, and cases cited. *Boston Gas Co.* v. *Assessors of Boston,* 334 Mass. 549, 571–572. That the tax board ultimately found a highest and best use did not render erroneous its consideration of other uses. See *Tigar* v. *Mystic River Bridge Authy.* 329 Mass. 514, 517–518; *Boston Gas Co.* v.

*Assessors of Boston,* 334 Mass. 549, 566; *Newton Girl Scout Council, Inc.* v. *Massachusetts Turnpike Authy.* 335 Mass. 189, 193–194.

As matter of construction, we do not agree with the taxpayer's contention that the granting of request numbered 3 was an implied finding that the operation of the terminal for special railroad purposes was considered profitable. The phrase ''to which the property might be profitably put'' modifies ''other uses'' and not ''any special purpose.''

(b) The fourth request was, ''Inasmuch as the property in issue has been joined with the lines of the New York, New Haven & Hartford and the Boston and Albany Railroads, its value must be considered in reference to the use to which it is adapted, and which is now made of it in connection with the property of the railroads.''

There was no error in granting this request, which was presented with the citation of *Blackstone Mfg. Co.* v. *Blackstone,* 200 Mass. 82, where, appropriately to the case at bar, it was said (page 89), ''Inasmuch as it [the property] has been joined to the property in Rhode Island and used with the slight additional fall there to produce a single unit of water power, and inasmuch as it is found that this is the most valuable use to which it can be put, there is no reason why its value should not be considered in reference to the use to which it is adapted, and which is now made of it in connection with the property in the other State.'' See *Troy Cotton & Woolen Manufactory* v. *Fall River,* 167 Mass. 517, 523–524.

The taxpayer again makes the contention that there is an implied finding of profitable use of the terminal for railroad purposes, which again we do not accept. The taxpayer also seems to contend that there is an implied finding of a special value to the present railroad owners contrary to *Massachusetts Gen. Hosp.* v. *Belmont,* 233 Mass. 190, 209. The ruling, however, is to a use to which the property is adapted and which is now made, and has no reference to the identity of any particular owner.

(c) The two remaining requests, as given, were: ''9. When the cost of reproduction is taken into consideration

as evidence of value, if the original property has depreciated, proper deduction therefor should be made." "10. In finding fair cash value of land and buildings consideration should be given to cost as disclosed by evidence, reproduction cost less depreciation and earning capacity."

The error which the taxpayer urges is that no deduction was made for obsolescence. The board of assessors counters with the contention that depreciation includes obsolescence. There is no hard and fast rule. Depreciation may be used by accountants and by businessmen in various senses. In *Attorney Gen.* v. *Trustees of Boston Elev. Ry.* 319 Mass. 642, 659, both terms were defined and, in citing many cases in the Supreme Court of the United States, the statement was made, "Another form of depreciation is obsolescence." There are many cases showing the absence of uniformly fixed definitions for the two. See Hills, Law of Accounting & Financial Statements, pp. 91 et seq. Cases of our own include *Boston* v. *Treasurer & Recr. Gen.* 237 Mass. 403, 416, and *Boston & Albany R.R.* v. *New York Cent. R.R.* 256 Mass. 600, 613. See *Stein* v. *Strathmore Worsted Mills,* 221 Mass. 86, 90.

In the case at bar due to lack of findings no error can be made to appear. Since the case must be further heard, we spend no further time on this dispute in semantics. At a new hearing the subject can be kept clarified in the testimony, and with the aid of precise findings may, without confusion, be properly presented on appeal.

3. Two exclusions of evidence offered by the taxpayer are contended to be in error.

(a) One Kenny, a real estate expert called by the taxpayer, testified that the property in the city limits most comparable to the terminal property was that in the Back Bay sold by the Boston and Albany Railroad Company to The Prudential Insurance Company; that that land and that location were more desirable than that of the terminal company; that that land was all zoned for general business purposes; and that he knew the price of the sale, which was made in February, 1957. The assessors objected in part at

least, on the ground that the property had been described as more desirable and was unimproved land. The witness was not allowed to state the sale price. The offer of proof was that there were an area of 623,100 square feet south of the right of way assessed on Huntington Avenue and a parcel north of the right of way fronting on Boylston Street containing 432,700 square feet, a total of 1,055,800 square feet; that the sale price was $4,075,000; and that sale price was equivalent to $3.86 a square foot.

The taxpayer was relying upon the principle of long standing that "evidence is admissible of sales of land in the vicinity, similar in essentials to the land in question, and reasonably near to the taking in point of time." *McCabe* v. *Chelsea,* 265 Mass. 494, 496. *Epstein* v. *Boston Housing Authy.* 317 Mass. 297, 300. The admissibility of such evidence is largely, although not exclusively, discretionary with the tribunal, here the tax board. *McCabe* v. *Chelsea, supra,* 496. Where there is a trial by jury in the Superior Court, the rule has been stated that "much must be left to the discretion of the presiding judge, who, in the first instance, is to determine whether there is such general similarity between the land sold and the land taken that the selling price of the former will furnish a fair criterion of the market value of the latter." *Iris* v. *Hingham,* 303 Mass. 401, 408. *Congregation of the Mission of St. Vincent de Paul* v. *Commonwealth,* 336 Mass. 357, 359. At a hearing before the tax board there should not be the same problem as in guarding against misleading a jury in the last two cases cited. That there were no buildings on the property sold would not be fatal to the admissibility of the evidence. *O'Malley* v. *Commonwealth,* 182 Mass. 196, 198.

In support of the tax board's ruling the assessors indicate as "important distinctions": (1) the properties were not in the same neighborhood, the locus being in "Boston proper" and the property sold being in the Back Bay and "more desirable"; (2) the locus was 95% in an industrial zone, and the remainder in a general business zone, whereas the property sold was all zoned for general business; and

(3) the locus was terminal property with station and buildings, whereas the property sold was railroad property without improvement other than tracks and rails. These reasons are not particularly impressive, but we are not prepared to say that there was error. As to the property sold being "more desirable," its sale price was $3.86 a square foot compared with a fair cash value of $7.79 a square foot under the valuation of the terminal property by the tax board. Perhaps after further findings the record will be such that we would hold that the exclusion was error. Compare Brush Hill Dev. Inc. v. Commonwealth, 338 Mass. 359, 364–365. At the present we shall content ourselves with saying that we are sure that it would not have been error to admit the evidence.

(b) The tax board excluded an agreement dated April 15, 1960, between the taxpayer and one Goode, whereby the former agreed to sell, and the latter agreed to buy, 175,083 square feet, more or less, with the buildings thereon, which are part of the terminal property. This agreement was before us in Attorney Gen. v. Department of Pub. Util. 342 Mass. 662. The sale concerned the headhouse and concourse, and was to be accompanied by a long term lease back to the taxpayer. The assessors argue that the exclusion was justified because the obligations of both parties were conditioned upon securing, if required, the approval of a number of others, such as an insurance company as mortgagee; a New York bank and the Secretary of the Treasury under flood loan agreements; the Interstate Commerce Commission and the Department of Public Utilities; and of The New York, New Haven and Hartford Railroad Company and The New York Central Railroad Company, the taxpayer's two principal stockholders. Again we are sure that the admission of the agreement would not have been error. That the agreement concerned only part of the property would not be decisive. Brush Hill Dev. Inc. v. Commonwealth, 338 Mass. 359, 364. At the rehearing if the agreement should again be excluded we are hopeful that the tax board will give the ground of exclusion.

4.   The taxpayer argues certain alleged errors in the admission of testimony of the assessors' experts.   These questions may not arise in this form at another hearing.   It would unduly extend an overlong opinion to discuss them. With adequate findings by the board any error in admission of evidence — which we do not intimate — could more readily be adjudged harmless or not.

5.   The decision of the Appellate Tax Board is reversed and the case is remanded to the board for further proceedings in conformity with this opinion.   The taxpayer is to have costs of this appeal.   G. L. c. 58A, § 13 (as amended through St. 1957, c. 522).

*So ordered.*