NEW ENGLAND CONFECTIONERY COMPANY *vs.* STATE TAX COMMISSION.

Suffolk. January 7, 1963. — March 4, 1963.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, SPIEGEL, & REARDON, JJ.

*Taxation,* Corporate excise. *Value.*

In determining the value of the tangible property, situated in Massachusetts and not subject to local taxation, of a domestic manufacturing corporation engaged in business within and without Massachusetts for the purpose of computing its excise for 1955 under G. L. c. 63, § 32, it was proper to apply a ruling of the State Tax Commission which allowed a reduction in the book value of such Massachusetts tangibles in cases where the value of the corporation's capital stock, computed by a formula including a consideration of its earnings over the preceding five years, was less than its "net book asset value," the difference being termed a "write-down," but which limited the reduction to a portion of the "write-down" bearing the same ratio to the total "write-down" as such Massachusetts tangibles bore to the total assets of the corporation; there was no merit in a contention by the corporation that the limitation on the reduction was "arbitrary, unreasonable and improper," and that

the reduction should have been allowed in the full amount of the "write-down," because such Massachusetts tangibles were its only assets which had an inexact value and could have been overvalued.

APPEAL from a decision by the Appellate Tax Board.

*Jesse R. Fillman (Joseph A. Gibbes,* of Virginia, with him) for the taxpayer.

*Edward J. McCormack, Jr.,* Attorney General, *Herbert E. Tucker, Jr.,* Assistant Attorney General, *& Nicholas L. Metaxas,* for the State Tax Commission, submitted a brief.

SPIEGEL, J. This is an appeal by the taxpayer from a decision of the Appellate Tax Board reading, in part, "that the value of such of the . . . [taxpayer's] tangible property situated in the Commonwealth on December 31, 1955, as is not subject to local taxation, was $4,302,124." The board refused the taxpayer's requests for rulings of law. The stenographic report of the proceedings before the board and the exhibits are part of the record on appeal. Most of the facts are not in dispute, many of them having been stipulated by the parties.

The taxpayer is a domestic manufacturing corporation engaged in business in Massachusetts and elsewhere. On July 10, 1956, the taxpayer filed its corporate excise tax return for the year ending December 31, 1955, based upon G. L. c. 63, § 32. At the time, that section of the statute imposed a tax on the taxpayer in an "amount equal to five dollars per thousand upon the value of its corporate excess or five dollars per thousand upon the value of such of its tangible property situated in the commonwealth on said day as is not subject to local taxation . . ., whichever is higher." The taxpayer's return included a tax computation based on the second or "tangible property" measure under the statute. On January 23, 1959, the taxpayer was notified of an increase in its tax liability for the year 1955, such increase resulting entirely from the commission's raising the taxpayer's "Massachusetts tangible property" figure. On May 4, 1959, the taxpayer filed for an abatement of its 1955 excise tax and was informed by the commission that the "abatement had been allowed but only within the

allowable limitations as defined by . . . Corporation Excise Ruling 1957–2.''[1] The parties do not contend that this ruling is inapplicable because it went into effect subsequent to the tax year here involved. It is a limitation imposed by this ruling which gives rise to the dispute in this case.

The following figures are stipulated by the parties. The taxpayer's net "Massachusetts tangible property not subject to local taxation" has a book value of $4,556,587. However, Ruling 1957–2 permits a "write-down" of this book value for excise tax purposes when the value of the taxpayer's capital stock (as determined pursuant to the ruling) is less than the corporation's "net book asset value" (a term comparable to net worth or book value). Such a "write-down" occurred in this case. Applying a formula which includes a consideration of earnings over the preceding five years, the taxpayer's capital stock was deemed to have a value of $5,300,760 while the "net book asset value" was $5,796,789. Under Ruling 1957–2, § V, the difference, or $496,029, is the "write-down." Up to and including this last figure the taxpayer does not challenge the reasonableness of Ruling 1957–2.

---

[1] We are concerned only with § V of this ruling, which reads,

"Valuation of Massachusetts Tangible Property not
Subject to Local Taxation

"If the tax falls upon Massachusetts tangible property not subject to local taxation, the value of such property shall be determined as follows:

"1. If the value of the capital stock is determined to be greater than 'net book asset value,' under any of the foregoing computations, then the value of Massachusetts tangible property not subject to local taxation shall not be reduced below the book value of such property.

"2. If the value of the capital stock is determined to be less than 'net book asset value,' under any of the foregoing computations the amount by which the Massachusetts tangible property not subject to local taxation may be reduced shall be determined as follows:

"1. From the 'net book asset value' there shall be subtracted the value of the capital stock so determined. The resulting amount shall be termed 'net book asset write-down.'

"2. The total book value of all Massachusetts tangible property not subject to local taxation shall be reduced by an amount which is equal to that portion of the 'net book asset write-down' found by multiplying said 'net book asset write-down' by a fraction, the numerator of which is the total Massachusetts tangible property not subject to local taxation and the denominator of which is the total book assets.''

The parties disagree, however, as to whether the taxpayer is entitled to use all or part of the "write-down" in reduction of its "Massachusetts tangible property" figure. The taxpayer contends that the full $496,029 should be applied to the $4,556,587 of "tangible property" without any limitation, thus giving rise to an ultimate figure of $4,060,558. The commission contends, and was sustained by the Appellate Tax Board, that the $496,029 "write-down" should be limited, in accordance with Ruling 1957–2, to "such proportion as the Massachusetts tangibles not subject to local taxation bear to the total assets of the corporation, or $254,463." Employing this formula the ultimate figure would be $4,302,124 ($4,556,587 less $254,463). The narrow issue for this court to decide is whether the taxpayer should have been credited with the entire $496,029 "write-down" or with merely a portion thereof.

The taxpayer's argument that the limitation used in the ruling is "arbitrary, unreasonable and improper" is as follows. The "write-down," which occurs because the value of the taxpayer's capital stock is less than the "net book asset value," can only mean that the taxpayer's assets are "overvalued" on its books. Once the amount of the "overvaluation" is ascertained, "it is necessary, as a matter of law," to determine the "specific assets" which are so overvalued. By a process of elimination, certain assets such as cash, accounts receivable, and prepaid expenses can be shown not to have been overvalued, leaving only "machinery and other assets" as the sole assets possibly overvalued. Unlike many of its assets, the taxpayer's "machinery and other assets" are located exclusively in Massachusetts. Thus, since the "overvaluation" can be traced solely to Massachusetts assets, the "overvaluation" or "write-down" should be applied to the "Massachusetts tangibles" in its entirety and not limited by a fraction which divides assets located in this State by the total assets of the company, wherever located.

We are not persuaded. The transcript is replete with evidence that the "write-down" has its origin in the entire

potentiality of the corporation and is not explained by the failure of specific assets, such as machinery, to generate their maximum return. The "write-down" occurs when the value of the capital stock is depressed and the formula for the value of the common stock has, as one of its components, the earnings record of the corporation for the preceding five years. Earnings may be depressed for any number of reasons ranging from the quality of the management to the general health of the industry. There are, quite obviously, innumerable intangibles which never appear on a balance sheet. Machinery and equipment are not usually unique items and do not alone explain why one firm has high earnings and thus a high valuation for its capital stock and another firm a much lower valuation. As was said in *Commonwealth* v. *Cary Improvement Co.* 98 Mass. 19, 22, "the property held by a corporation does not furnish a proper measure of the value of its capital stock regarded as a franchise." *Commissioner of Corps. & Taxn.* v. *Boston Edison Co.* 310 Mass. 674, 693. *United Shoe Mach. Corp.* v. *Gale Shoe Mfg. Co.* 314 Mass. 142, 157, 158. As the "write-down" is attributable to a depressed capital stock value, a condition explained only in terms of the entire corporation both within and without this State, the commission was justified in refusing to apply the entire amount of the "write-down" to tangible property in Massachusetts. The particular limitation in Ruling 1957–2, while not the only formula that might have been used, was, we believe, a reasonable method of protecting revenues. It "fairly reflected the value" of the assets involved "in accordance with principles and methods consistent with the statutes and with a reasonable uniformity in their application." *State Tax Commn.* v. *Sears Roebuck & Co.* 344 Mass. 471, 477.

The refusal of the taxpayer's requests for rulings raises no issues not already considered in this opinion.

There was no error.

*Decision affirmed.*