PACKARD MILLS, INC. *vs.* STATE TAX COMMISSION.
(and a companion case between the same parties).

Suffolk.    March 8, 1963. — April 4, 1963.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & KIRK, JJ.

*Taxation,* Appellate Tax Board: findings; Corporate excise.    *Value.*

Upon an appeal to the Appellate Tax Board from the denial by the State Tax Commission of an abatement of an excise assessed under G. L. c. 63, § 32, as amended through St. 1939, c. 363, § 1, on a domestic woolen textile corporation the stock of which was closely held and not traded in the open market, a report filed by the board containing extended recitals of evidence, but only meager subsidiary findings, and a conclusion as to the values of the taxpayer's capital stock and corporate excess was inadequate for a review by this court where it appeared that such conclusion adopted precisely the values fixed by the commission through a rigid adherence to a formula using book values and a certain capitalization basis prescribed by a commission ruling for many types of business corporations, that the taxpayer introduced substantial evidence that the capital stock and corporate excess values should be computed by methods, other than the formula, reflecting facts about the taxpayer and the woolen textile industry, and that the board's findings did not establish the applicability of the commission's formula; and the case must be remanded to the board for proper subsidiary findings.    [719–720, 725–726]

The fair value of the capital stock of a domestic business corporation for the purpose of calculating its corporate excise under G. L. c. 63, § 32, as amended, is to be determined by a reasoned consideration of all relevant facts, and not solely by applying any particular formula unless there is substantial basis for concluding that use thereof is appropriate in the circumstances. [726]

APPEAL from decisions by the Appellate Tax Board.

*Raymond T. Mahon* (*Irene Gowetz* with him) for the taxpayer.

*Edward W. Brooke,* Attorney General, *Herbert E. Tucker, Jr.,* Assistant Attorney General, *& Nicholas L. Metaxas,* for State Tax Commission, submitted a brief.

CUTTER, J. The Appellate Tax Board rendered a decision for the commission upon two appeals to it seeking abatement of additional corporation excises[1] assessed against the appellant (Packard) with respect to Packard's corporate excess as of December 31, 1955, and December 31, 1956. See G. L. c. 63, § 44 (as amended through St. 1955, c. 549, § 1). Packard appealed.[2] The board, at the request of Packard, filed "findings of fact and [a] report," which contains extended recitals of evidence, but only the following limited subsidiary findings. Packard "is a domestic manufacturing corporation with its principal place of business in Webster . . . where it manufactures woolens and worsted textiles. . . . [It] is a closely held corporation

---

[1] General Laws c. 63, § 32 (as amended through St. 1939, c. 363, § 1), requires each domestic business corporation to "pay annually an excise equal to the sum of the following . . . [subject to a minimum not here relevant] (1) An amount equal to five dollars per thousand upon the value of its corporate excess or five dollars per thousand upon the value of such of its tangible property situated in the commonwealth on . . . [a specified] day as is not subject to local taxation nor taxable under section sixty-seven, whichever is higher. (2) An amount equal to two and one half per cent of its net income determined to be taxable in accordance with the provisions of this chapter." General Laws c. 63, § 30 (as amended through St. 1943, c. 459, § 2), defines " 'Corporate excess,' in the case of a domestic business corporation," as being (with certain exceptions) "the fair value of its capital stock on the last day of the taxable year . . . less the value of" certain corporate assets stated in clauses (a), (b), (c), and (d) of par. 3. In the present cases the board found that "[t]here is no dispute as to the amount of the allowable deductions." Both § 30 and § 32 have been materially revised for application in taxable years after 1956. The most recent amendments are by St. 1962, c. 756, §§ 1, 2, 5, which *substantially rewrote these sections.*

[2] The complete evidence is before us.

and none of its stock is actually traded in the open market.'' Then follow findings about the contents of the 1955 and 1956 excise returns (which are described below) and about the details of the additional assessments and the abatement proceedings. Except as already indicated, the board did not state what portions of the evidence it found to be true. The board concluded, ''Upon a consideration of all the evidence, the board finds that on December 31, 1955, the fair value of the capital stock of the appellant was $5,610,791; that the value of its corporate excess on that day was $5,125,498; that on December 31, 1956, the fair value of its capital stock was $5,988,902, and the value of its corporate excess was $5,460,891.''

The board's findings as to the fair value of Packard's capital stock on the last day of each taxable year adopted precisely the values fixed by the commission in what appears to have been a rigid adherence to a formula contained in the commission's Corporation Excise Ruling 1957–2, entitled ''Re: Valuation of the Capital Stock of a Corporation.'' This accounting formula was not offered as an exhibit but was frequently referred to in the testimony. There is no suggestion in the commission's brief that the ruling has not been accurately reproduced as an appendix to Packard's brief. We consider it to the extent that we might consider any published administrative opinion for its value, if any, as a decisional precedent.[3] Cf. *New England Confectionery Co.* v. *State Tax Commn., ante,* 534, 536, where the parties did ''not contend that this ruling . . . [was] inapplicable because it went into effect subsequent to the tax year . . . involved'' and challenged ''the reasonableness of Ruling 1957–2'' only in limited respects not here relevant.

In its 1955 return Packard computed the excise under

---

[3] The 1957 ruling, if intended as a regulation, has not been shown to have any application to Packard's returns for the taxable years 1955 and 1956, and the resulting excises. We need not consider whether the ruling comes within the commission's powers to ''make . . . such *reasonable* regulations, *not inconsistent with law*, as may be necessary to interpret and enforce any statute imposing any . . . excise'' (emphasis supplied). See G. L. c. 14, § 4, par. 1 (as amended through St. 1954, c. 681, § 3).

§ 32 at $5 per $1,000 on the value of its tangible property in Massachusetts not subject to local taxation, rather than on the alternative based on the value of Packard's corporate excess. See fn. 1, *supra.* The return stated "that the method employed in Schedule C of this return does not reflect a fair value of . . . [Packard's] capital stock. It results in an arbitrary overvaluation . . . wholly inconsistent with the market for northern textile business properties at December 31, 1955. . . . [Packard] believes that for . . . computation of the . . . excise the . . . actual value of the taxable Massachusetts tangible assets . . . should be used. . . . The actual values have been determined on a basis agreed to by the . . . commission and . . . [Packard's] officers in prior years."

Packard in Schedule A of the return reported (as required by the return form) not only the book values on December 31, 1955, of its assets, but also what it considered their "actual value" to be (see Schedule E of return). The book values (as the evidence showed) were determined in accordance with accepted accounting principles at historical values depreciated, apparently in a manner consistent with Federal income tax law provisions. The actual values were determined by Packard's management and "represent the actual values of the company in the opinion of the officers, the actual value of . . . [Packard's] assets less the liabilities." The return for 1955 showed net book value of capital assets and inventories to be $4,386,255.11 against an estimated "actual value" of such assets of $2,850,611.57.

The commissioner, in computing the fair value (as of December 31, 1955) of Packard's capital stock, used the book value of Packard's machinery ($1,638,900) instead of its reported "actual value" ($819,450); he deducted the assessed values ($395,085) of Massachusetts real estate (with a book value of $704,146) instead of reported "actual value" ($112,672); he increased the reported "actual value" of supplies from $41,624 by an amount not clear from the record, but probably to their book value of $83,247. These principal adjustments led to a recomputation of the fair

Packard Mills, Inc. *v.* State Tax Commission.

value of Packard's "corporate excess" (fn. 4, item 9) and of its capital stock prior to deductions (fn. 4, item 7) in the manner indicated in the margin.[4]   The commission, in accordance with Ruling 1957-2, multiplied net book asset values by two and capitalized Packard's average earnings for five years at 10%.   The total of the results of these two computations was divided by three, thus giving net book asset values twice the weight given to earnings capitalized at 10%.   The assessed value of deductible items was then subtracted to produce the commission's determination of "corporate excess."   The commission adjusted Packard's return relating to the taxable year 1956 (which need not be described in detail) in substantially the same way.   The commission assessed a deficiency tax of $18,628.41 (including interest) with respect to the taxable year 1955, and of $15,431.16 (including interest) with respect to the taxable year 1956.

Packard filed applications for abatement, asserting that the deficiencies were "primarily due to the overvaluing of . . . [Packard's] stock . . . by the commission" and averring "that because of the depressed state of the textile industry, neither the stock nor the underlying assets of the

[4] Major differences between the computation in the 1955 calendar year return and that made by the commission in auditing the return are shown by the following table based upon the summaries in the board's findings of fact and report.

| (1) Packard's 1955 Excise Return | | (2) Commission's Audit Computation | |
|---|---|---|---|
| 1. Total Mass. tangibles (at estimated "actual values") | $2,656,632 | 1. Asset value from balance sheet | $6,942,263 |
| 2. Exempt Mass. tangibles | 120,117 | 2. Liabilities per balance sheet | 1,399,006 |
| 3. Excess | $2,536,515 | 3. Net asset value | $5,543,257 |

The commissioner (see col. [2] above) then made the following further computations:

| | |
|---|---|
| 4. Net asset value (item 3) multiplied by 2 | $11,086,514 |
| 5. Average earnings for five years, per Sch. B of return ($574,586), multiplied by 10 (i.e. capitalized at 10%) | 5,745,860 |
| 6. Total of items 4 and 5 | $16,832,374 |
| 7. Item 6 divided by 3 | $ 5,610,791 |
| 8. Allowable deductions (tangibles) (cf. col. [1], item 2 above) | 485,293 |
| 9. Corporate excess (cf. col. [1], item 3, above) | $ 5,125,498 |

corporation are worth more than 50% of their book value.''
These applications in effect were denied by the failure of
the commission to act upon them and Packard appealed to
the Appellate Tax Board.

Packard contends that the board's determination of the
fair value of its stock at the end of 1955 and of 1956 was
capricious and was not supported by substantial evidence.
See G. L. c. 30A, § 14 (8) (e), (g).   It also contends that the
decision is not warranted by the board's findings of fact or
by the evidence.   See G. L. c. 30A, § 11 (8).[5]   See also G. L.
c. 58A, § 13 (as amended through St. 1957, c. 522).

The board's report and subsidiary findings are inade-
quate for reasons recently discussed very fully in *Leen* v.
*Assessors of Boston, ante,* 494, 501–502.   The board was
required ''to make adequate subsidiary findings of fact to
support its decision to the end that a reviewing court from
the [board's] record . . . could ascertain . . . whether the
decision and the findings were supported by substantial evi-
dence and otherwise . . . [in compliance] with statutory
standards.''

The evidence presented by the commission in support of
its determination of the ''fair value of . . . [Packard's]
capital stock on the last day of the taxable'' years 1955 and
1956 amounted to little more than a recitation by the chief
of the bureau of corporations in the Department of Corpo-
rations and Taxation of summaries of parts of Ruling
1957–2, without any significant attempt to explain why it
was appropriate to apply that ruling to Packard.   The wit-
ness conceded that he was ''no expert in the valuation of
textile machinery,'' that for every corporation the commis-
sion used a 10% rate to capitalize earnings, and that no rep-
resentative of the department had been to Packard's plant
or inspected its machinery.   The evidence requires the con-
clusion that the commission's determination and the bureau

---

[5] Section 11 (8) provides that every ''agency decision shall be in writing or
stated in the record'' and ''accompanied by a statement of reasons for the
decision, including determination of each issue of fact or law necessary to the
decision,'' at least where as here, there was a ''timely request'' for a written
decision under c. 58A, § 13.

chief's testimony relied completely upon use of the ruling.[6]

Packard introduced testimony of a security analyst and of an investment banker, whose qualifications as experts were in evidence, in addition to exhibits showing (a) Packard's retained earnings, net sales, and outstanding capital stock for the years 1946 to 1957, and sales, net earnings, and earnings per share from 1946 to 1956; (b) somewhat similar figures for three other woolen companies deemed comparable by the witness who produced them; (c) Packard's year-end balance sheets for the years 1954 to 1956; and (d) statistics on wool fabric production, 1945 to 1959. The testimony of the expert witnesses indicated the following conditions. "[T]extile stocks had been declining in popularity since the end of the war and the woolen textile industry was running into dislocations due to the introduction of numerous synthetics." Earnings were declining and foreign competition and competition of new fibres was increasing. "About 200 out of 845 woolen and worsted textile companies liquidated." The woolen "textile . . . industry was not looked upon as a growth industry" or one "from which you could expect reasonable stable earnings." At the end of December 1955, woolen and worsted stocks were selling at about five times earnings and "blue chip" stocks of top-grade large corporations (apparently in other industrial fields) at approximately thirteen times earnings. "[S]hares of similar mills, comparable to Packard, were selling at four to five times earnings."

The investment banker made comparative analyses of Packard and of the three woolen companies mentioned already, whose shares were listed on the New York Stock Exchange, as a step in valuing Packard's capital stock. He concluded that the value of Packard's total stock at the end

---

[6] The formula, the witness stated, was "the result of a long series of discussions with all interested parties operating in this field of determination of the fair value of the capital stock for excise purposes" and "the composite result of the best thinking of all the people who would be brought to bear on the problem, and therefore, after we arrived at the provisions of the formula, we have applied it as the basis for arriving at the fair value of the capital stock for . . . excise purposes" with exceptions of a character and extent not clearly specified by the witness.

of 1955 was about $3,500,000. In doing so, he capitalized Packard's earnings by multiplying them by 5.87. He gave consideration to "the factors of assets, earnings, and dividends." This witness pointed out that, in 1955 and 1956, Packard's management "was largely . . . a reflection of the ability of" its president, whose services he regarded as important to this "one-man management" corporation.

The investment analyst testified that in his opinion, at the end of 1955 and 1956, the value of all Packard's stock was about $3,000,000. There was also testimony by a vice president of Packard who pointed out that in 1955 and 1956 occurred "the beginning of the flow of [textile] imports into this country and . . . the advent of the synthetics, orlon, dacron, etc., into the woolen business," and that Packard's business prospects then "weren't too encouraging."

There is no occasion for us now to consider the merits of the case presented by Packard beyond noting that it introduced substantial evidence tending to support the use of valuation methods other than those found in Ruling 1957–2.[7] The board was not bound to believe Packard's evidence. It was bound, however, to make specific subsidiary findings with respect to it, for the evidence, if reliable, tended to show that the fair value of Packard's capital stock must be determined by methods reasonably reflecting, among other things, (a) conditions and prospects in the woolen industry, (b) the relation of textile earnings and assets to the fair market values of textile corporate stocks, (c) appropriate rates of capitalization of textile earnings, and (d) the then current market valuation of physical assets of textile concerns. Ruling 1957–2, on the other hand, seems to require, in determining capital stock values for all types of business corporations (see, however, fn. 7, *supra*), the somewhat inflexible use of book values and the capitalization of five year earnings on a 10% basis, perhaps even in cases where the business community would give greater weight to earnings

[7] Ruling 1957–2, in §§ II and IV, makes somewhat different provisions, not here relevant, with respect to the valuation of the capital stock of a corporation actively traded on a security exchange or over the counter. Packard's stock is not so traded.

records, future prospects, net current asset position, and similar factors.

The board's meager findings afford no satisfactory basis for ascertaining what facts about Packard and the woolen textile industry the board found to be true and relied upon in using the commission's formula. Without such findings we cannot determine whether those findings were warranted, whether the formula was a reasonable valuation method to use, and whether the final decision of the board could be supported on the basis of those findings. The cases must be returned to the board for proper subsidiary findings (as distinguished from mere recitals of evidence) after such further hearings, if any, as the board may deem appropriate.

Until we have before us adequate subsidiary findings, we need not review the principles to be applied by the board in a case of this character. This was done very recently in *State Tax Commn.* v. *Sears Roebuck & Co.* 344 Mass. 471. Even considering the fair value of its capital stock "from the standpoint of" Packard as a corporation, that fair value "may be very different from the value of its corporate property" or from the book value of its assets, which to a large extent reflects accounting concepts having no necessary or immediate relation to fair market values. See *United Shoe Mach. Corp.* v. *Gale Shoe Mfg. Co.* 314 Mass. 142, 157–159. Fair value is to be determined by a reasoned consideration of all relevant facts found to be true, weighing them in the general manner discussed in the *Sears Roebuck & Co.* case, and not solely by applying any particular formula, unless in the evidence there is substantial basis for concluding that formula to be appropriate in the circumstances.

The cases are remanded to the Appellate Tax Board for further proceedings consistent with this opinion. Packard is to have costs of these appeals. G. L. c. 58A, § 13 (as amended through St. 1957, c. 522).

*So ordered.*